534 A.2d 1125

Charter Hospital of Bucks County, Pennsylvania, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Department of Health, Respondent.

Argued September 15, 1987, before Judges CRAIG and MACPHAIL, and Senior Judge NARICK, sitting as a panel of three.

*Richard L. Shackelford,* with him, *Susan T. Gelder, King & Spalding,* and *Ruth M. Siegel, Post & Schell, P.C.,* for petitioner.

*Darius G. C. Moss,* Assistant Counsel, for respondent.

OPINION BY JUDGE CRAIG, December 11, 1987:

Charter Hospital of Bucks County, Pennsylvania, Inc. appeals an order of the State Health Facility Hearing Board upholding the Department of Health's determination that three psychiatric hospitals, proposed to be developed by Charter, were subject to certificate-of-need review. Charter requested determinations of non-reviewability from the department on December 8, 1986. On December 22, 1986, the department replied that under the Pennsylvania Health Care Facilities Act, Act of July 19, 1979, P.L. 130, No. 48, *as amended,* 35 P.S. §448.101, the three proposed hospitals were new institutional health facilities requiring certificate-of-need review. The board affirmed this holding on May 29, 1987. We granted Charter's Petition for Permission to Appeal on June 11, 1987. We now affirm.

Two primary issues are presented for review: (1) whether health care facilities which do not accept or receive any state or federal funds are excluded by statute or regulation from certificate-of-need review and (2) whether the exclusion provision of §103 of the Pennsylvania Act, 35 P.S. §448.103, constitutes an unlawful delegation of legislative authority to the Secretary of Health and Human Services.[1]

The facts of the case are not in dispute. Charter's three requests for determinations of non-reviewability —for proposed psychiatric hospitals in Bucks County,

---

[1] Formerly the Secretary of Health, Education and Welfare.

Harrisburg and Pittsburgh—described the hospitals to be developed, and included the following statement:

The hospital will not accept, directly or indirectly, any Federal or State governmental funds for capitalization, depreciation, interest, research, or reimbursement. Therefore, the construction, development, and operation of this hospital does not require certificate of need review. Charter thus requests the Department to issue a determination of non-reviewability for this project.

On December 22, 1986, the department issued its determination that the proposed hospitals were projects subject to certificate-of-need review under section 701(a)(1) of the Act, 35 P.S. §701(a)(1). That section provides in pertinent part:

(a) No person shall offer, develop, construct or otherwise establish or undertake to establish within the state a new institutional health service without first obtaining a certificate of need from the department. For the purposes of this chapter, 'new institutional health services' shall include:

(1) The construction, development or other establishment of a new health care facility or health maintenance organization.

(2) Any expenditure by or on behalf of a health care facility or health maintenance organization in excess of $150,000 which . . . is a capital expenditure. . . .

Charter's claim of non-reviewability is based on an exclusionary provision in the definition of "health care facility" in section 103 of the Act, 35 P.S. §448.103:

This definition shall exclude all health care facilities as hereinabove defined that do not accept, directly or indirectly, any Federal or State Governmental funds for capitalization, depreciation,

interest, research or reimbursement, unless the Secretary of Health, Education and Welfare, pursuant to Federal Public Law 93-641, section 1523(a)(4)(B), concludes that this exclusionary provision is unsatisfactory to the Departments of Health, Education and Welfare.

The Pennsylvania Health Care Facilities Act was enacted July 19, 1979, effective October 1, 1979. At that time, section 1523(a)(4)(B) of the National Health Planning and Resources Development Act of 1974, P.L. 93-641, required designated state agencies to "administer a State certificate of need program which applies to new institutional health services proposed to be offered or developed within the State and *which is satisfactory to the Secretary.*" (Emphasis added.) The reference to the "Secretary" was to the federal Secretary of Health, Education and Welfare (HEW).

On September 11, 1979, Pennsylvania Secretary of Health Dr. Gordon K. MacLeod wrote to the Secretary of HEW regarding the exclusionary provision:

> We are currently preparing regulations to implement this program so as to conform with the federal requirements, and would like your opinion as to whether or not the above exclusionary provision is satisfactory to the Department of Health, Education and Welfare.

Colin C. Rorrie, Jr., the Director of the Bureau of Health Planning, HEW, responded to the state's letter on October 3, 1979:

> Sections 1523(a)(4)(B) and 1523(a)(5) of the Public Health Service Act apply to all 'health care facilities'. The Federal regulations do not provide for any exceptions to required coverage; therefore, such an exclusionary provision is clearly unsatisfactory, and the Secretary would so conclude. (Rorrie letter)

At the same time the Pennsylvania legislature was debating and adopting its Act, the United States Congress was in the process of amending the federal statute, P.L. 93-641. Congress passed these amendments, embodied in P.L. 76-97, on October 4, 1979. P.L. 97-79 amended the language of section 1523(a)(4) (B) to describe the role of designated state agencies including the Pennsylvania Department of Health, as follows:

> [To] administer a State certificate of need program which applies to new institutional health services proposed to be offered or developed within the State and *which is consistent with the standards established by the Secretary by regulation.* (Emphasis added.) See, 42 USC 300m-2.

The Secretary's regulations appear at 42 C.F.R. §122 (1986) and 42 C.F.R. §123 (1986).

On August 1, 1980, the Pennsylvania Department of Health published its regulations under the Pennsylvania Act. The regulation's definition of "health care facility" contained no exclusionary provision for health care facilities not accepting state or federal funds. 28 Pa. Code §401.2.

On November 14, 1986, President Reagan signed the Health Programs Act of 1986, P.L. 99-660. Section 701, Title VII of P.L. 99-660 repealed P.L. 93-641, effective January 1, 1987.

In summary, the controlling chronology in this case was:

(1) 1974. The National Health Planning and Resources Development Act, P.L. 93-641, is passed by Congress.

(2) July 19, 1979. The Pennsylvania Health Care Facilities Act is enacted, effective October 1, 1979, requiring the Department of Health to establish a certificate-of-need program. Section 103 contains an exclu-

sionary provision for non-recipient health care facilities, subject to the approval of the Secretary of HEW.

(3) September 11, 1979. The Pennsylvania Secretary of Health writes to the Secretary of HEW, seeking review of the Section 103 exclusionary provision.

(4) October 3, 1979. The Director of the Bureau of Health Planning, HEW, responds to the letter, saying the exclusionary provision is unsatisfactory.

(5) October 4, 1979. P.L. 96-79 amends Section 1523(a)(4)(B) to require state certificate-of-need programs to be "consistent with standards established by the Secretary [of HEW] by regulation".

(6) August 1, 1980. The Pennsylvania Department of Health publishes certificate-of-need regulations which do not include any exclusionary provision for non-recipient hospitals.

(7) November 14, 1986. Effective January 1, 1987, P.L. 99-660 repeals P.L. 93-641, the National Health Planning and Resources Development Act of 1974. See (1) above.

(8) December 8, 1986. Charter files for a determination of non-reviewability.

(9) December 22, 1986. The Department of Health determines that Charter's proposed hospitals are subject to certificate-of-need review.

## Exclusion of Non-Recipient Health Care Facilities

In support of its claim of non-reviewability, Charter presents three main arguments: (1) In light of the repeal of P.L. 93-641, the federal law, the definition of "health care facility" in section 103 of the Pennsylvania Act excludes Charter's proposed hospitals from certificate-of-need review; (2) rules of statutory construction and the repeal of 93-641 mandate an interpretation of section 103 which excludes the proposed hospitals from review; and (3) because there has never been any con-

clusion made by the federal Secretary of Health and Human Services that the exclusionary provision is unsatisfactory, the exclusion is valid. The department responds that the repeal of P.L. 93-641 has no effect on the definition of a "health care facility" in section 103, as that definition was ultimately resolved; that rules of statutory construction support its position that the exclusion is not operative; and that the letter from the federal Director of Health Planning was an effective response to the department's inquiry regarding the compatibility of the exclusionary provision with federal regulations.

In reaching its decision, the board found that the department, in light of the Rorrie letter, had interpreted the exclusionary provision to be of no effect, and wrote its regulations accordingly. Because the board is "bound by the duly promulgated regulations of the Department," 35 P.S. §448.506(b), it felt that it had no alternative but to accept the department's interpretation.

Charter's argument, that the repeal of P.L. 93-641, effective January 1, 1987, automatically reactivates the exclusionary provision of §103 of the Act, is not conclusive.

First, Charter's request for a determination of nonreviewability, and the department's response, were made in December 1986, when P.L. 93-641 was still in effect. The propriety of the board's determination must be made in light of the then-existing law.

Second, the critical language in the exclusionary provision is a "self-destructing " clause. It is subject to a condition subsequent in that it is operative ". . . unless the Secretary of Health, Education and Welfare concludes that this exclusionary provision is unsatisfactory to the [federal] Departments. . . ." Whether the exclusionary provision survives at all depends on whether the federal secretary concluded that the provision was not

satisfactory. If that secretary never issued any conclusion, the exclusionary provision clearly survives; if, however, that secretary found the provision to be unsatisfactory to the Department of Health, Education and Welfare, the exclusionary provision died and non-recipient health care facilities are not exempt from certificate-of-need review.

The department argues that the Rorrie letter represents a decision of the Secretary that the exclusionary provision was unsatisfactory. The letter stated that federal regulations did not allow for exclusion of non-recipient hospitals from certificate-of-need review, that such exclusion was unsatisfactory, and that the Secretary would so conclude. Charter argues that the Rorrie letter itself was insufficient to trigger the self-destructing clause, because it was not a conclusion by the Secretary, as called for by the language of the statute.

If the director of the Bureau of Health Planning had authority to speak for the Secretary, we believe that the Rorrie letter would satisfy the requirements of the statute and trigger the self-destructing clause. However, our review of delegation of authority within the Department of Health, Education and Welfare indicates that Dr. Rorrie did not have authority to speak for the Secretary on this issue. By official notice in the Federal Register, November 12, 1975, the Secretary delegated authority under Title XV of P. L. 93-641 to the Assistant Secretary. This authority was later redelegated by notice in the Federal Register, April 25, 1979, to the Director of the Bureau of Health Planning, excluding the authority delegated to the Regional Health Administrators. Among the excluded powers was "Authority under Section 1522 to approve State administrative programs and any modifications to such programs. . . ." Section 1522(a) defines a State administrative program as a pro-

gram for the performance within the State of the functions prescribed by section 1523. Because the question put before Dr. Rorrie by the department was whether non-recipient health care facilities could be excluded from certificate-of-need review, a section 1523 program, we conclude that this decision was beyond the authority delegated to the Director, Bureau of Health Planning. The delegation of authority within the Department of Health, Education and Welfare did not give Dr. Rorrie authority to act in the Secretary's stead in disapproving this exclusion from certificate-of-need review.

The department argues, in the alternative, that the Health Planning Amendments of 1979, P.L. 96-79, clarified the federal secretary's role in approving certificate of need programs. As noted above, section 1523(a)(4)(B) was amended to read "[To] administer a State certificate-of-need program . . . *which is consistent with the standards established by the Secretary by regulation.*" (Emphasis added.) The regulations established by the Secretary, at 42 C.F.R. §122 (1986) and 42 C.F.R. §123 (1986), were published on October 21, 1980. The department argues that these regulations contained no provision allowing exclusion for non-recipient facilities, and the exclusionary provision in section 103 was therefore void for being inconsistent with the standards established by the Secretary.

We agree that the regulations issued by the Secretary, pursuant to P.L. 96-79, could act as the necessary conclusion required to trigger the self-destructing clause in section 103 of the Act of 1972. Section 1937 of the Statutory Construction Act, 1 Pa. C. S. §1937, provides:

(a)  A reference in a statute to a statute or to a regulation issued by a public body or public officer includes the statute or regulation *with all amendments and supplements thereto* and any

new statute or regulation substituted for such statute or regulation, as in force at the time of application of the provision of the statute in which such reference is made, unless the specific language of or the context of the reference in the provision clearly includes only the statute or regulation as in force on the effective date of the statute in which such reference is made. (Emphasis added.)

Following this rule, the reference in section 103 to P. L. 93-641 §1523(a)(4)(B) included the language amended by P. L. 96-79. No longer was a specific conclusion by the Secretary necessary to trigger the self-destructing clause; instead, the clause was activated if the exclusionary provision was inconsistent "with the standards established by the Secretary by regulation."

Our review of the relevant regulations shows that the exclusion of non-recipient health care facilities from certificate-of-need review is inconsistent with federal regulations. Neither 42 C.F.R. §122 or 42 C.F.R. §123 (1986) have provisions allowing such an exclusion. The only exclusion noted in the definition of "health care facility" is directed toward Christian Science institutions. 42 C.F.R. §123.401 (1986). The scope of review required for certificate-of-need programs is set out in 42 C.F.R. 123.404(a) (1986):

(a) The State certificate of need program must apply to the obligation of capital expenditures, the offering of new institutional health services and the acquisition of major medical equipment. . . .

The language employed in the federal regulations is comprehensive, without any indication that non-recipient facilities might be exempted from the process.

We conclude that, under the amended language of section 1523(a)(4)(B), the self-destructing clause of Sec-

tion 103 of the Act would be triggered if the exclusionary provision was inconsistent with the federal regulations established by the Secretary. We find that the provision is inconsistent with those regulations, and that the department correctly wrote its regulations treating the exclusionary provision as if it had no effect. The department's determination that Charter's proposed hospital projects were subject to certificate-of-need review was proper and in accord with both state and federal statute and regulations.

### Unconstitutional Delegation of Legislative Power

Charter contends that the self-destructing clause of section 103 of the Act represents an unlawful delegation of legislative authority from the General Assembly to the Secretary of Health, Education and Welfare in violation of Article II, Section 1 of the Pennsylvania Constitution. Charter argues that the question of whether health care facilities which do not accept any governmental funds may be exempted from certificate-of-need review is one of legislative policy, and that the statute attempts to adopt a prospective federal ruling, making the statute incomplete at the time of enactment.

The law is well settled that:

[T]he Legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend.

*Locke's Appeal*, 72 Pa. 491, 498 (1873).

*Locke's Appeal* thus distinguished between two types of legislation: "status-finding" and "rule-making". In *East Suburban Press, Inc. v. Township of Penn Hills*, 40 Pa. Commonwealth Ct. 438, 444, 397 A.2d 1263, 1266 (1979), we noted the following distinctions between the two:

> [L]egislation which involves *status-finding,* a statutory statement of policy by the legislature to become operative only upon the finding by an administrative agent that a described status exists. A status-finding statute does not involve a delegation of law-making, at least not in the sense of creating general rules governing the subject of the legislature's concern, and therefore the courts have not required detailed standards, but only a description of the status. . . .
>
> A second type of statute of the *rule-making* type, where the legislature states a general policy but gives the administrative agent, within limits set by express standards, the power to fill in details of the policy with regulations. This type involves a delegation of rule-making in the sense of creating generalized rules of continuing application on the subject of the legislature's concern.

*See also Latella v. Unemployment Compensation Board of Review,* 74 Pa. Commonwealth Ct. 14, 459 A.2d 464 (1983).

The delegation in section 103 to the Secretary of Health, Education and Welfare fits the status-finding description. It asked for a determination as to whether the exclusionary provision was inconsistent with the federal regulatory scheme. No improper rule-making is involved; the clause does not delegate an untrammeled power to make a general rule.

The General Assembly enacted the Health Care Facilities Act to establish a certificate-of-need program under the auspices of the federal program, P. L. 93-641. To participate in the federal program, administratively and financially, the state program had to comply with federal requirements. The legislature, in enacting section 103 of the Act, intended to exclude non-recipient health care facilities from certificate-of-need review *un-*

*less* such an exclusion was inconsistent with federal regulations. Section 903 of the Act, 35 P.S. §448.903, states:

> It is the intent of this act to meet minimal Federal requirements for compliance with Federal law and regulations under Title XV of the Public Health Service Act requiring State certificate of need legislation as interpreted by the General Assembly. Should any provisions be found by a court to violate such requirements, such provisions shall be invalid and severable.

The self-destructing clause in section 103 ensured compliance with the applicable federal regulations, so that Pennsylvania could participate in the federally-sponsored certificate-of-need program. It did not delegate to the Secretary unlimited power to set a general policy for the state, but sought only a determination of whether this sole provision conformed to the established federal program.

Accordingly, we affirm the decision of the State Health Facility Hearing Board holding that the hospitals proposed by Charter were subject to certificate-of-need review under the provisions of the Health Care Facilities Act.

ORDER

Now, December 11, 1987, the order of the State Health Facility Hearing Board, dated May 29, 1987, is affirmed.