SANTA FE NATURAL TOBACCO COMPANY, INC., and Robin L. Sommers, an individual d/b/a Robin Sommers Marketing, Plaintiffs,

v.

Robert A. JUDGE, Sr., Secretary of the Department of Revenue of the Commonwealth of Pennsylvania, Defendant.

Civil Action No. 1:CV–96–1218.

United States District Court, M.D. Pennsylvania.

Jan. 16, 1997.

Bruce Jeffrey Warshawsky, Bridget E. Montgomery, Eckert Seamans Cherin & Mellott, Harrisburg, PA, Rodrick J. Enns, Petree Stockton, L.L.P., Winston–Salem, NC, for plaintiffs.

Gwendolyn T. Mosley, Office of Attorney General, Harrisburg, PA, for defendant.

## *MEMORANDUM*

CALDWELL, District Judge.

Plaintiffs, Santa Fe Natural Tobacco Co., Inc. ("Santa Fe"), and Robin L. Sommers, filed this action against Defendant, Robert A. Judge, Sr., Secretary of the Pennsylvania Department of Revenue, seeking a declaration that a particular provision of Pennsylvania's Cigarette Sales and Licensing Law, 72 Pa. Stat. § 204–A(a)(2) (1995), violates the United States and Pennsylvania Constitutions, and requesting a permanent injunction against its enforcement. Before us are Plaintiffs' motion for summary judgment and Defendant's motion for judgment on the pleadings.

### I. *Background*

Santa Fe is a New Mexico corporation engaged in the manufacture and sale of specialty cigarettes; Sommers is Santa Fe's President and a principal owner of the corporation. Unlike the major cigarette companies, Santa Fe does not use established cigarette wholesalers or distributors. Instead, it distributes its products directly to retailers, or through Robin Sommers Marketing, a sole proprietorship owned by Sommers which distributes cigarettes exclusively for Santa Fe.

In order to distribute Santa Fe's products to retailers in Pennsylvania, Sommers obtained a Pennsylvania Cigarette Dealer's License, authorizing him to act as a cigarette stamping agent.[1] Sommers maintained this license and renewed it annually from 1991 through 1995. During that period, Sommers acted as Santa Fe's licensed distribution agent in Pennsylvania.

On January 24, 1996, Sommers applied for renewal of his license. Santa Fe had also applied for a license on December 4, 1995 (the company intended to take over its own distribution in Pennsylvania). Both applications were denied.

Defendant, through the Miscellaneous Tax Division of the Bureau of Business Trust Fund Taxes, explained to Plaintiffs that their applications had been denied pursuant to a 1993 amendment to the Cigarette Sales and Licensing Law. This amendment changed 72 Pa. Stat. § 204–A(a)(2) to include the requirement that an applicant for a license have "received commitments from at least two cigarette manufacturers whose aggregate share is at least forty per centum of the Commonwealth's cigarette market" (the "Commitment Requirement").[2] 1993 Pa. Legis. Serv. 46 (West 1993). Because Sommers acts as distributor exclusively for Santa Fe (and because Santa Fe intended to act solely as its own distributor), Plaintiffs had not obtained such commitments, and allege that they are unable to do so.

Plaintiffs filed this action on June 28, 1996, alleging that the Commitment Requirement violates the United States and the Pennsylvania Constitutions. On that date we issued a temporary restraining order, extending the effectiveness of Sommers' Cigarette Dealer's License. On July 2, 1996, we issued a preliminary injunction, extending the license until all proceedings in this Court are completed. The material facts are not in dispute, and the parties now seek final resolution of the dispute, Plaintiffs through a motion for

---

1. A cigarette stamping agent is authorized by the Commonwealth to purchase tax stamps and affix them to packages of cigarettes. 72 Pa. Stat. §§ 202–A, 204–A.

2. The Act does not define the term "commitment." The Department of Revenue reads the statute as requiring letters of intent expressing a willingness or intent on the part of the manufacturers to sell cigarettes to the applicant. (*See* Motion for Summary Judgment ex. 3, at 33–34 (deposition of Anthony Nikoloff)).

In support of their motion for summary judgment, Plaintiffs have submitted Defendant's answers to interrogatories, which include a table indicating the Pennsylvania market share of each of the five major cigarette manufacturers for the months of May and June of 1996. Those figures (averaged and rounded to the nearest whole percentage point) are:

| | |
|---|---|
| Brown & Williamson Tobacco Corp. | 17% |
| Liggett & Myers Inc. | 2% |
| Lorillard Tobacco Co. | 15% |
| Philip Morris, Inc. | 44% |
| R J Reynolds Tobacco Co. | 22% |
| | 100% |

(Motion for Summary Judgment, ex. 2, sheet 1).

summary judgment under Rule 56, Defendant through a motion for judgment on the pleadings under Rule 12(c). Because Defendant has responded to Plaintiffs' motion for summary judgment, and therefore has had an opportunity to submit any pertinent material as required under Rule 12(c), and because the material facts do not appear to be in dispute, we will treat the motions as cross motions for summary judgment.

## II. *Standard of Review*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In reviewing the evidence, facts and inferences must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 553 (1986). Summary judgment must be entered in favor of the moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party...." *Id.*, 475 U.S. at 586–87, 106 S.Ct. at 1356, 89 L.Ed.2d at 552 (citations omitted).

## III. *Discussion*

Plaintiffs assert that Pennsylvania's Commitment Requirement is unconstitutional on two grounds: first, that it constitutes an impermissible delegation of legislative authority to cigarette manufacturers, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and in violation of Article II, § 1 of the Pennsylvania Constitution; and second, that it creates a classification between similarly situated entities without any rational basis, and thus violates the Equal Protection Clause of the Fourteenth Amendment.[3]

## A. Delegation of Legislative Authority

■ A delegation of legislative authority to private parties violates the Due Process Clause of the Fourteenth Amendment. *Washington ex. rel. Seattle Title Trust Co. v. Roberge*, 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210 (1928); *Carter v. Carter Coal Co.*, 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160 (1936); *General Elec. Co. v. New York State Dep't of Labor*, 936 F.2d 1448, 1455 (2d Cir.1991). Similarly, a delegation of legislative power violates the Pennsylvania Constitution's requirement that "[t]he Legislative power of this Commonwealth shall be vested in a General Assembly," Pa. Const. Art. II § 1. *State Bd. of Chiropractic Examiners v. Life Fellowship of Pa.*, 272 A.2d 478, 441 Pa. 293 (1971).

In *Roberge*, the Supreme Court struck down a Seattle zoning ordinance which permitted the construction of a philanthropic home for the elderly in a residential district only "when the written consent shall have been obtained of the owners of two thirds of the property within four hundred feet of the proposed building." 278 U.S. at 118, 49 S.Ct. at 50–51, 73 L.Ed. at 212. The Court held that the delegation of such power to neighboring landowners, unfettered by any standards and without provision for review, "is repugnant to the due process clause of the Fourteenth Amendment." *Id.* at 121–22, 49 S.Ct. at 52, 73 L.Ed. at 213–14.

Article II, § 1 of the Pennsylvania Constitution imposes similar restrictions. In *Life Fellowship*, the Pennsylvania Supreme Court struck down a provision of the Chiropractic Registration Act, requiring chiropractors to attend a two-day conference held by the Pennsylvania Chiropractic Society, or an equivalent educational conference, as a prerequisite to renewal of their licenses. 272 A.2d 478, 441 Pa. 293. The court found that the statute's grant of power to the Chiropractic Society to establish whatever standards it pleased for the education necessary

---

**3.** The complaint also alleges that the Commitment Requirement violates Article I, § 26 (equal protection) and Article III, § 32 (special legislation) of the Pennsylvania Constitution. As Plaintiffs do not address these claims in their motion for summary judgment, and because their discussion is unnecessary to the disposition of the case, we will not address them here.

for the maintenance of chiropractic licenses was "an abrogation by the General Assembly of its constitutional legislative duties." *Id.* at 481, 441 Pa. at 298, 272 A.2d 478.

■ The Commitment Requirement suffers from the same infirmities as the statutes struck down in *Roberge* and *Life Fellowship.* The statute in question here establishes a system in which private approval is a prerequisite for public action. By requiring that an applicant for a stamping agent's license obtain commitments from two cigarette manufacturers, who must between them represent at least 40% of the market, the Commitment Requirement gives the major cigarette manufacturers (particularly Philip Morris, which itself accounts for some 44% of the market) power to control who may or may not become a stamping agent.

■ The Commonwealth most certainly may exercise control over the distribution and sale of cigarettes. In doing so, however, the legislature may not hand *de facto* control over the process to private parties, "uncontrolled by any standard or rule ... not bound by any official duty, [and] free to withhold consent for selfish reasons or arbitrarily." *Roberge,* 278 at 122, 49 S.Ct. at 52, 73 L.Ed. at 214; *Life Fellowship,* 272 A.2d at 481, 441 Pa. at 298; *see also Schulz v. Milne,* 849 F.Supp. 708, 712 (N.D.Cal.1994) (city's deference to support or opposition of private neighborhood review board; "the state may not constitutionally abdicate or surrender its power to regulate land-use to private individuals without supplying standards to govern the use of private discretion"). 72 Pa. Stat. § 204–A(a)(2)'s requirement that an applicant for a stamping agent's license have commitments from "at least two cigarette manufacturers whose aggregate share is at least forty per centum of the Commonwealth's cigarette market" violates both the United States and the Pennsylvania Constitutions.

## B. Equal Protection

■ Under the Fourteenth Amendment, a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Where a state law creates non-suspect classifications, and treats those classes differently, the law will be found to violate Equal Protection only if it is not "rationally related to legitimate governmental objectives." *Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 1080–81, 67 L.Ed.2d 186, 195 (1981). A statute will pass the rational basis test so long as "any state of facts reasonably may be conceived to justify it." *Bowen v. Gilliard,* 483 U.S. 587, 601, 107 S.Ct. 3008, 3017, 97 L.Ed.2d 485, 501 (1987).

The purposes of the Cigarette Sales and Licensing Law are formally expressed by the Legislature in the law's statement of legislative intent:

> It is hereby declared to be in the public interest of this Commonwealth:
>
> (1) To prohibit advertising or offering cigarettes for sale below cost if the intent thereof is to increase the incidence of cigarette usage or to injure, destroy or substantially lessen competition.
>
> (2) To declare such practice to be unfair, deceptive and adverse to the collection of taxes from the sale of cigarettes.
>
> (3) To license cigarette dealers to effect the orderly collection of taxes.
>
> (4) To promote fair competition.

72 Pa. Stat. § 201–A. Defendant argues that the Commitment Requirement is rationally related to the third stated legislative purpose, the licensing of cigarette dealers to effect the orderly collection of taxes. Requiring cigarette dealers to have commitments from two major manufacturers prior to licensing ensures that the only dealers capable of being licensed will be large, well-established wholesalers. This, Defendant argues, is rationally related to the orderly collection of taxes, because it will be more efficient for the Commonwealth to monitor a small number of large wholesalers than many smaller ones, and because wholesalers who have received advance commitments from large cigarette manufacturers are likely to be financially stable.

Plaintiffs respond that the Legislature could have devised other means of assuring that licenses are given only to large wholesalers, and that having cigarettes wholesaled only by large dealers does not necessarily promote the orderly collection of taxes.

Plaintiffs convincingly argue that the Commitment Requirement is not the ideal mechanism for the licensing of suitable stamping agents, and that it actually undermines the legislature's stated goal of promoting fair competition, 72 Pa. Stat. § 201–A(4). A statute which creates a non-suspect classification does not violate equal protection, however, merely because it is not the best mechanism for the advancement of the governmental interests in question. *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 942–43, 59 L.Ed.2d 171, 176 (1979). In applying the rational basis test, we may not substitute our judgment for that of the legislature. *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313–14, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211, 221 (1993); *Vance*, 440 U.S. at 97, 99 S.Ct. at 942–43, 59 L.Ed.2d at 176. We cannot conclude that the Commitment Requirement lacks any rational relationship to the purposes advanced by Defendant, and therefore it does not violate the Fourteenth Amendment.

## IV. *Relief*

We have concluded that the Commitment Requirement provision of 72 Pa. Stat. § 204–A(a)(2) violates the United States and Pennsylvania Constitutions. Plaintiff seeks permanent injunctive relief preventing the enforcement of this provision.

Permanent injunctive relief is appropriate when: (1) we may properly exercise equity jurisdiction; (2) the party seeking relief has prevailed on the merits; and (3) the party seeking relief can show that the balance of equities favors an injunction. *Roe v. Operation Rescue*, 919 F.2d 857, 867 n. 8 (3d Cir.1990). Defendant has not indicated any opposition to Plaintiffs' entitlement to injunctive relief if they succeed on the merits, and we find that all three requirements for such relief are satisfied here.