PENNSYLVANIA BUILDERS ASSOCI-
ATION; Murry Development Corp.;
William Murry & Son, Inc.; Woods
Edge Builders, Inc.; The Murry Com-
panies/Sher–Wal, Inc. Joint Venture;
TOA PA IV, LP; TOA PA V, LP;
TOA PA VI, LP; TOA PA VII, LP;
and TOA PA XIII, LP, Susquehanna
Builders of Lycoming County, Inc.,
Petitioners,

v.

DEPARTMENT OF LABOR AND
INDUSTRY, Respondent.

Commonwealth Court of Pennsylvania.

Argued June 23, 2010.
Decided Aug. 25, 2010.

Robert B. Hoffman, Harrisburg, for petitioner.

Patrick S. Cawley, Deputy Attorney General, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, PELLEGRINI, Judge, LEAVITT, Judge, BROBSON, Judge, McCULLOUGH, Judge, and BUTLER, Judge.

OPINION BY Judge BUTLER.

Before this Court en banc are the preliminary objections filed by the Commonwealth of Pennsylvania, Department of Labor & Industry (L & I), to the amended petition for review filed by: the Pennsylvania Builders Association; Murry Development Corp.; William Murry & Son, Inc.; Woods Edge Builders, Inc.; The Murry Companies/Sher–Wal, Inc. Joint Venture; TOA PA IV, LP; TOA PA V, LP; TOA PA VI, LP; TOA PA VII, LP; and TOA PA XIII, LP, Susquehanna Builders of Lycoming County, Inc. (Petitioners). Also before this Court is an application for summary relief filed by Petitioners. The issues are: (1) whether the pleadings state a claim upon which relief may be granted to Petitioners, and (2) whether Petitioners are entitled to summary relief. Based on the following, we sustain L & I's preliminary objections, and dismiss Petitioners' motion for summary relief.

Petitioner, Pennsylvania Builders Association (PBA), is a non-profit, professional trade organization representing over 9,000 Pennsylvania member companies involved in the building industry as builders, remodelers, material suppliers, subcontractors and consultants. It brings this action on its behalf, and on behalf of its members engaged primarily in residential construction. Petitioners, Murry Development Corp. and William Murry & Son, Inc. are builder and owner, respectively, of Crossgates, a residential development in Lancaster County. Petitioners, Woods Edge Builders, Inc. and The Murry Companies/Sher–Wal, Inc. Joint Venture are, respectively, builder and owner of Sutherland, a residential development in Lancaster County. Both Crossgates and Sutherland developments include single family and townhouse configurations. Petitioner, TOA is general manager for development and construction of five communities for persons 55 and older in Pennsylvania, which consist of single family and garden homes in joined doubles, triples and quadruples, in various stages of completion, contract and development. Petitioner, Susquehanna Builders of Lycoming County, Inc. is a seller and builder of log homes. PBA's members build primarily under the International Residential Code, but some build under the International Building Code.

The Pennsylvania Construction Code Act (PCCA) [1] was enacted by the General Assembly in 1999, and applies to construction, alteration, repair and occupancy of all buildings in Pennsylvania. [2] According to Section 301(a) of the PCCA, 35 P.S.

---

**1.** Act of November 10, 1999, P.L. 491, *as amended*, 35 P.S. §§ 7210.101–1103.

**2.** The majority of the PCCA became effective in 2004. Sections 104(d)(3) and (4), 301, 302, 701 and 1103 of the PCCA, 35 P.S. §§ 7210.104(d)(3) and (4), 7210.301, 7210.302, 7210.701, 7210.1103, took effect immediately upon enactment of the statute. The remainder of the PCCA was to take effect 90 days following publication of notice in the Pennsylvania Bulletin that the regulations required by the PCCA were finally adopted. That occurred in April of 2004.

§ 7210.301(a), within 180 days, L & I was to promulgate regulations to establish as Pennsylvania's Uniform Construction Code (UCC) the then-current 1999 Building Officials and Code Administrators International, Inc. (BOCA) National Building Code, 14th Ed. (IBC), and the International Code Council's (ICC) [3] International One and Two Family Dwelling Code, 1998 Ed. (IRC).[4] This was done in an effort to insure uniform, modern construction standards and regulations, and to promote safety, health and sanitary construction throughout the Commonwealth.

Pursuant to Section 304(a) of the PCCA, 35 P.S. § 7210.304(a), L & I was mandated to promulgate regulations by December 31st of each year the IBC and IRC model codes are modified, in order to likewise update the Pennsylvania UCC. By regulations effective in April of 2004, L & I adopted the 2003 versions of the IBC and IRC as Pennsylvania's UCC. Then, late in 2006, L & I amended its regulations to adopt the 2006 editions of those codes as Pennsylvania's UCC. L & I adopted the 2006 codes without going through notice-and-comment rulemaking, stating that the changes made were mandated by the PCCA or reflected numerous statutory amendments to the PCCA, and that it was in the public interest to expedite the regulations. *See* 36 Pa.B. 7548.

In October of 2008, Section 107 was added to the PCCA,[5] 35 P.S. § 7210.107, thereby establishing the UCC Review and Advisory Council (RAC), a 19–member group consisting of industry members (such as contractors, engineers, inspectors and architects) appointed by the Governor, whose responsibility is to gather information relative to the UCC and proposed changes thereto, evaluate it, and make recommendations to the Governor concerning it. Under Sections 107(b)(3) and 304(d)(1)-(2) of the PCCA, 35 P.S. §§ 7210.107(b)(3), 7210.304(d)(1)-(2), RAC is authorized to make determinations as to whether any new or amended provisions of ICC's codes are not consistent with the PCCA, or are inappropriate for inclusion in Pennsylvania's UCC, and RAC is to notify L & I of the same by May 1st of the issuing year. Where that is the case, L & I must exclude the offending provisions when adopting the UCC, thereby leaving the corresponding provisions of the prior UCC version in effect.

At its September 2008 meeting, ICC adopted 2009 codes. During April of 2009, RAC held four public meetings about ICC's 2009 codes, and accepted testimony from stakeholders but, on April 30, 2009, notified L & I that it had no exclusions to recommend. Thereafter, by notice published on December 26, 2009, L & I promulgated final form regulations adopting the 2009 versions of the codes to replace the existing 2006 codes as the UCC in the Commonwealth, again stating that it was mandated and in the public's best interest to do so. *See* 39 Pa.B. 7196. The 2009 IBC and IRC were effective as the Commonwealth's UCC as of December 31,

---

**3.** The ICC is a non-governmental association whose members represent the 50 states, the District of Columbia and federal agencies, including the Department of Defense. It develops model codes and standards for use in the construction of residential, commercial and military buildings. The ICC was founded in 1994 by BOCA, the International Conference of Building Officials, and the Southern Building Code Congress International, Inc. which, until that time, were three separate construction code-writing organizations.

**4.** The International One and Two Family Dwelling Code has come to be known as the International Residential Code.

**5.** Section 107 was added by Section 2 of Act of October 9, 2008, P.L. 1386.

2009.[6] Compliance with these codes is required in order to obtain occupancy permits for residential construction in Pennsylvania.

On January 19, 2010, Petitioners filed a petition for review in this Court's original jurisdiction seeking a declaration that the 2009 UCC and other related codes are null and void as violative of Article II, Section 1 of the Pennsylvania Constitution, Pa. Const. art. II, § 1, and seeking to enjoin L & I from enforcing the codes, plus costs, attorney's fees and other relief this Court deems necessary and proper. On February 16, 2010, Petitioners amended their petition for review to add Susquehanna Builders, and to assert specific facts related to it.

Petitioners claim that the new and amended provisions of the 2009 codes, especially the sprinkler requirements, have the effect of increasing the cost of an average newly-constructed home by approximately $15,000.00. Petitioners aver that the additional costs will have a significant impact on the demand for their home building and remodeling services, and will adversely affect the availability of financing of homes. In their amended petition for review, Petitioners added that the 2009 UCC revised the International Energy Conservation Code (IECC), thereby eliminating certain energy conservation trade-offs that had been included in the 2006

UCC, and making it nearly impossible for a log home to satisfy the UCC. Petitioners aver that, since the 2009 codes reflect important public policy determinations to which there are substantial and legitimate arguments, the changes to the PCCA should be made by the General Assembly, rather than L & I which follows ICC; otherwise, legislative authority is being vested in ICC, rather than the General Assembly, in violation of Article II, Section 1 of the Pennsylvania Constitution.

Simultaneously with their original petition for review, Petitioners filed an application for preliminary injunction to enjoin L & I from enforcing regulations adopting the 2009 version of the ICC IRC as the UCC in the Commonwealth (leaving the 2006 version in effect), and from advising municipalities and others of such action pending a final decision in this case. L & I opposed Petitioners' application.[7] After a hearing, by order dated March 10, 2010, this Court denied Petitioners' application for preliminary injunction on the basis that Petitioners failed to meet all of the requirements for a preliminary injunction to be issued, namely that the relief requested must be reasonably suited to abate the offending activity.[8]

■ On March 18, 2010, Petitioners filed an application for summary relief,

---

**6.** The 2009 ICC Code, and correspondingly, Pennsylvania's UCC includes the IRC, the IBC and other model codes (incorporated by reference into the IBC and IRC), including: the International Mechanical Code, the International Fuel Gas Code, the International Plumbing Code, the International Fire Code, the International Energy Conservation Code, the International Existing Building Code, the International Wildland–Urban Interface Code, the International Performance Code and appendices.

**7.** Amicus briefs were filed by the National Fire Sprinkler Association, the Pennsylvania

Residential Fire Sprinkler Commission, the Phoenix Society for Burn Survivors, and the American Institute of Architects in opposition to Petitioners' application for preliminary injunction. By order of this Court dated March 10, 2010, the briefs filed by the National Fire Sprinkler Association and the Pennsylvania Residential Fire Sprinkler Commission were dismissed for failure to comply with Pa.R.A.P. 531.

**8.** Petitioners' application for reconsideration, which was opposed by L & I, was, likewise, denied by this Court by order dated March 30, 2010.

which L & I opposed. On April 7, 2010, L & I filed preliminary objections to the amended petition for review, which Petitioners opposed. Both raise the same central issue, i.e., whether the PCCA improperly delegates to L & I and, by extension ICC, law-making authority in violation of Article II, Section 1 of the Pennsylvania Constitution.

 Preliminary objections to an original jurisdiction petition for review are permissible under Pa.R.A.P. 1516(b). Our review of matters before this Court on preliminary objections is limited to the pleadings. *Pennsylvania State Lodge, Fraternal Order of Police v. Dep't of Conservation & Natural Res.*, 909 A.2d 413 (Pa.Cmwlth.2006), aff'd, 592 Pa. 304, 924 A.2d 1203 (2007).

> [This Court is] required to accept as true the well-pled averments set forth in the [pleadings [9]], and all inferences reasonably deducible therefrom. Moreover, the [C]ourt need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and, where any doubt exists as to whether the preliminary objections should be sustained, the doubt must be resolved in favor of overruling the preliminary objections.

*Id.* at 415–16 (citations omitted).

In support of its preliminary objections, L & I argues that the General Assembly did not improperly delegate law-making authority to ICC, but made a fundamental policy decision to select the ICC codes as a guide for Pennsylvania, then created RAC to execute its policy choices in a manner

appropriate for Pennsylvania's construction industry. Moreover, L & I avers that Petitioners have no clear right to the relief they request, since discarding the 2009 UCC would require reverting to the 2006 UCC, which suffers from the same constitutional infirmity Petitioners allege for the 2009 version. Based on the following, we hold that while the 2006 version of Pennsylvania's UCC adopted pursuant to the PCCA appears to have violated Article II, Section 1 of the Pennsylvania Constitution, the 2009 version does not.

 By claiming that the PCCA is unconstitutional, Petitioners have a heavy burden to overcome.

> Our law provides a strong presumption that legislative enactments, as well as the manner in which legislation is enacted, do not violate the Constitution. A party that challenges the constitutionality of a statute bears 'a very heavy burden of persuasion' to overcome this presumption. 'Accordingly, a statute will not be declared unconstitutional unless it *clearly, palpably,* and *plainly* violates the Constitution [and a]ll doubts are to be resolved in favor of finding that the legislative enactment passes constitutional muster.'

*Ass'n of Settlement Cos. v. Dep't of Banking,* 977 A.2d 1257, 1261 (Pa.Cmwlth.2009) (citations omitted).

Article II, Section 1 of the Pennsylvania Constitution provides that "[t]he legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives." Pa. Const. art. II, § 1. "Legislative power has been described as the power to incur public debts, levy or collect

---

**9.** "[T]he pleadings are limited to the petition for review, an answer thereto, a reply if the answer contains new matter or a counterclaim, a counter-reply if the reply to a counterclaim contains new matter, a preliminary objection, and an answer thereto." Pa.R.A.P. 1516(b).

taxes or make laws." *Scuoteguazza v. Dep't of Transp.*, 41 Pa.Cmwlth. 534, 399 A.2d 1155, 1157 (1979). The legislative power implicated here is the General Assembly's authority to "make laws." In *Association of Settlement Companies,* this Court stated that "Article II, section 1 embodies the fundamental concept that only the General Assembly may make laws, and cannot constitutionally delegate the power to make law to any other branch of government or to any other body or authority." *Ass'n of Settlement Cos.,* 977 A.2d at 1265 (quotation marks omitted). Thus, neither L & I nor ICC may be delegated the General Assembly's power to make law.

▇▇▇▇ The General Assembly may, however, delegate rule-making authority. This Court has declared that "[t]he Legislature may ... authorize an agency to carry out the legislative intent described in general terms through rules, regulations and standards established by the agency." *Bortz Coal Co. v. Air Pollution Comm'n,* 2 Pa.Cmwlth. 441, 279 A.2d 388, 392 (1971). The General Assembly may delegate: "rule-making in the sense of creating generalized rules of continuing application on the subject of the legislature's concern." *Charter Hosp. of Bucks County, Pa., Inc. v. Dep't of Health,* 111 Pa.Cmwlth. 576, 534 A.2d 1125, 1130 (1987). Properly delegated rule-making authority exists: "where the legislature states a general policy but gives the administrative agent, within limits set by express standards, the power to fill in details of the policy with regulations." *Id.*

> 'Where the standard fixed by the Legislature is not arbitrary or unlimited, but is definite and reasonable, the delegation of power or discretion will be sustained as constitutional. In considering the standard, regard must be had to the purpose and scope of the Act, the sub-

ject matters covered therein, the duties prescribed, and the broad or narrow powers granted, because those factors will often determine whether or not a sufficiently clear, definite and reasonable standard has been established.'

*Bortz Coal Co.,* 279 A.2d at 393 (quoting *Dauphin Deposit Trust Co. v. Myers,* 388 Pa. 444, 449, 130 A.2d 686, 688 (1957)).

▇▇▇▇ There is not a bright line test for determining exactly how or when rules, regulations or standards developed by administrative agencies or non-governmental parties become improper enactments of substantive law. In *Gilligan v. Pennsylvania Horse Racing Commission,* 492 Pa. 92, 422 A.2d 487 (1980), the Pennsylvania Supreme Court held "[t]he latitude of the standards controlling exercise of the rule-making powers expressly conferred on [a non-legislative party] must be viewed in light of the broad supervisory task necessary to accomplish the express legislative purpose." *Id.,* 492 Pa. at 98, 422 A.2d at 490. Ultimately, "[t]he rules, regulations and standards of the regulatory agency must be reasonable, understandable, available, and must not violate the constitutional rights of any citizen." *Bortz Coal Co.,* 279 A.2d at 392. "[T]he delegation of authority to an agency is construed liberally when the agency [namely, L & I,] is concerned with protecting the public's health and welfare." *DRB, Inc. v. Dep't of Labor & Indus.,* 853 A.2d 8, 19 (Pa.Cmwlth.2004), *aff'd,* 585 Pa. 8, 887 A.2d 1216 (2005).

Thus, to the extent the General Assembly was attempting via the PCCA to delegate its rule-making authority over Pennsylvania's building codes to L & I and, consequently ICC, it had the authority to do so as long as, in light of the subject matter covered and the scope of the powers granted therein, the PCCA sets forth a definite and reasonable standard for such authority.

Petitioners imply that L & I has adopted ICC's codes as Pennsylvania's substantive construction law "sight unseen," i.e., without going through notice-and-comment rulemaking. It would appear from a strict reading of the PCCA that, prior to the introduction of RAC to the process, L & I was, in fact, mandated to promulgate ICC's codes as Pennsylvania's UCC without exception. So if, in fact, L & I does not go through notice-and-comment rulemaking, and there is no other oversight of the process, Pennsylvania's UCC would be adopted without the opportunity for interested parties to express their views on how those changes would affect the Commonwealth.[10] As a result, it would appear that at least for Pennsylvania's 2006 UCC, ICC wielded extraordinary power to establish Pennsylvania's building laws.

As for the 2009 UCC at issue here, the introduction of RAC to the process of L & I's adoption of the Pennsylvania UCC afforded oversight and input by industry members, and meant that L & I could no longer adopt ICC's codes "sight unseen." Thus, what was unconstitutional about the pre-RAC process had been rectified by the time L & I was required to adopt ICC's 2009 codes. The RAC process served as a means for the General Assembly to restrain L & I's promulgation of Pennsylvania's construction laws. According to the pleadings, it is undisputed that at the time L & I had to adopt ICC's 2009 codes, RAC was in place, held hearings, and received submissions from PBA on ICC's 2009 codes. The fact that RAC made no recommendations for exclusions to L & I does not mean that the process did not work as intended.

In Section 304(d)(1) of the PCCA, 35 P.S. § 7210.304(d)(1), the General Assembly expressly stated that, in making its determinations as to whether certain of ICC's codes should be omitted from Pennsylvania's UCC, RAC may consider "(i) [t]he impact that the provisions may have upon the health, safety and welfare of the public[,] (ii) [t]he economic reasonableness and financial impact of the provisions[, and] (iii) [t]he technical feasibility of the provisions." Moreover, Section 301 of the PCCA, 35 P.S. § 7210.301, specifically dictates in a very specifically-detailed list of regulations, the manner in which L & I must adopt Pennsylvania's UCC. Clearly, the General Assembly has delegated its rule-making authority over Pennsylvania's construction industry to L & I with definite and reasonable standards.

Petitioners, however, fail to acknowledge that the General Assembly may delegate more than mere status-finding authority to an administrative agency. They also misconstrue the legal authority they cite in support of their claim. In several of the cases cited by Petitioners, the Supreme Court held that the delegation to private bodies of the General Assembly's power to set government pricing or to disburse substantial government funds is unconstitutional. *See Pennsylvania Coal Mining Ass'n v. Ins. Dep't,* 471 Pa. 437, 370 A.2d 685 (1977); *Hetherington v. McHale,* 458 Pa. 479, 329 A.2d 250 (1974); *Olin Mathieson Chem. Corp. v. White Cross Stores, Inc., No. 6,* 414 Pa. 95, 199 A.2d 266 (1964). However, neither pricing nor disbursement of government funds are at issue in the instant case. In other cases cited by Petitioners, rulemaking by a non-governmental entity was deemed a violation of the Arti-

---

10. Pursuant to Sections 303, 501 and 503 of the PCCA, 35 P.S. §§ 7210.303, 7210.501, 7210.503, the implications reach down to the municipal level, since municipalities must adopt as local ordinance the UCC adopted by L & I, in order to be able to administer and enforce the PCCA's provisions.

cle II, Section 1 non-delegation clause, not because, as Petitioners would have this Court believe, it was a delegation to a non-governmental entity, but because the General Assembly failed to provide adequate standards and limitations to guide that entity's actions. *See Santa Fe Natural Tobacco Co., Inc. v. Judge*, 963 F.Supp. 437 (M.D.Pa.1997); *Pennsylvania Coal Mining Ass'n v. Ins. Dep't*, 471 Pa. 437, 370 A.2d 685 (1977); *State Bd. of Chiropractic Exam'rs v. Life Fellowship of Pennsylvania*, 441 Pa. 293, 272 A.2d 478 (1971). That is not the case here.

The involvement of a non-governmental body in the General Assembly's rule-making process is not new. In *Gima v. Hudson Coal Co.*, 310 Pa. 480, 165 A. 850 (1933), the Pennsylvania Supreme Court upheld Rule 29 of the Anthracite Mine Law wherein, rather than providing specific safety standards for the storage and firing of explosives, the General Assembly merely incorporated by reference any rules provided by the manufacturers on those matters since, as the Supreme Court quoted the Superior Court, "[t]he General Assembly cannot be expected to enact laws which shall in themselves keep abreast of every advance of science and invention in the explosive line any more than it can of itself determine when a working place is free of gas and fit to work in...." *Id.*, 310 Pa. at 488, 165 A. at 853. Certainly, in light of the high danger involved with explosives, the General Assembly recognized its limitations of time and knowledge and deferred the drafting of the specifics of the law to a more knowledgeable group. The same reasoning applies in this case, where, the General Assembly's purposes for the PCCA include the provision of standards for the protection of life, health, property and environment, delegation of the details of the construction code may be better left to ICC, as reviewed by the RAC and adopted by L & I.

More recently, in Section 306(a.2) of the Workers' Compensation Act,[11] the General Assembly dictated relative to medical examinations conducted in order to determine the extent of permanent impairment that:

> [t]he degree of impairment shall be determined based upon an evaluation by a physician who is licensed in this Commonwealth, who is certified by an American Board of Medical Specialties approved board or its osteopathic equivalent and who is active in clinical practice for at least twenty hours per week, chosen by agreement of the parties, or as designated by the department, pursuant to *the most recent edition of the American Medical Association 'Guides to the Evaluation of Permanent Impairment.'*

(Emphasis added). Thus, similar to the use of ICC's codes as a guide for establishing Pennsylvania's UCC, the American Medical Association is used as a guide to establish Pennsylvania's impairment ratings.

It is clear, in this case, that the General Assembly has properly delegated its rule-making authority, and that it delegated such authority to L & I, with definite and reasonable standards.

 In addition to rule-making authority, the General Assembly may "delegate authority and discretion in connection with the execution and administration of a law...." *Ass'n of Settlement Cos.*, 977 A.2d at 1265 (quotation marks omitted).

---

11. Act of June 2, 1915, P.L. 736, *as amended,* added by Section 4 of the Act of June 24, 1996, P.L. 350, 77 P.S. § 511.2(1).

[T]o do so, it must establish primary standards and impose upon others the duty to carry out the declared legislative policy in accordance with the general provisions of the enabling legislation.... [T]he principal limitations on the General Assembly's power to delegate such authority are twofold: (1) the basic policy choices must be made by the Legislature; and (2) the legislation must contain adequate standards which will guide and restrain the exercise of the delegated administrative functions.

*Id.* (citations and quotation marks omitted). Therefore, if the General Assembly was attempting via the PCCA to delegate to L & I and, consequently ICC, its execution and administrative authority over Pennsylvania's building codes, it had the authority to do so, as long as: (1) basic policy choices are still made by the General Assembly; and (2) the legislation contains adequate standards to guide and restrain the exercise of those functions.

This Court has stated that, "[i]n determining whether an act expresses basic policy choices, a reviewing court should look to the act's purpose, its nature and its reasonable effect; [courts] are not limited to the mere letter of the law but must look beyond the letter to determine its true purpose and effect." *Id.* (quotation marks omitted). In this case, the PCCA's basic policy choices are made by the General Assembly. Section 102(b) of the PCCA clearly sets forth the General Assembly's purpose for the PCCA by providing eight specific objectives for the PCCA.[12] Since it is clear that the PCCA sets forth the General Assembly's basic policy, the first requirement for lawful delegation of administrative duties by the General Assembly has clearly been met.

■ The PCCA also contains adequate standards to guide and restrain its execu-

12. The PCCA's express objectives are:

(1) To provide standards for the protection of life, health, property and environment and for the safety and welfare of the consumer, general public and the owners and occupants of buildings and structures.

(2) To encourage standardization and economy in construction by providing requirements for construction and construction materials consistent with nationally recognized standards.

(3) To permit to the fullest extent feasible the use of state-of-the-art technical methods, devices and improvements consistent with reasonable requirements for the health, safety and welfare of occupants or users of buildings and structures.

(4) To eliminate existing codes to the extent that these codes are restrictive, obsolete, conflicting and contain duplicative construction regulations that tend to unnecessarily increase costs or retard the use of new materials, products or methods of construction or provide preferential treatment to certain types or classes of materials or methods of construction.

(5) To eliminate unnecessary duplication of effort and fees related to the review of con-

struction plans and the inspection of construction projects.

(6) To assure that officials charged with the administration and enforcement of the technical provisions of this act are adequately trained and supervised.

(7) To insure that existing Commonwealth laws and regulations, including those which would be repealed or rescinded by this act, would be fully enforced during the transition to Statewide administration and enforcement of a Uniform Construction Code. Further, it is the intent of this act that the Uniform Construction Code requirements for making buildings accessible to and usable by persons with disabilities do not diminish from those requirements previously in effect under the former provisions of the act of September 1, 1965 (P.L. 459, No. 235), entitled, as amended, "An act requiring that certain buildings and facilities adhere to certain principles, standards and specifications to make the same accessible to and usable by persons with physical handicaps, and providing for enforcement."

(8) To start a process leading to the design, construction and alteration of buildings under a uniform standard.

tion and L & I's exercise of the delegated administrative functions. Pennsylvania's non-delegation doctrine "does not require that all of the details needed to administer a law be precisely or separately enumerated in the statute." *Matter of Revocation of Rest. Liquor License No. R–12122,* 78 Pa.Cmwlth. 159, 467 A.2d 85, 87 (1983). Moreover, as stated previously, standards that control a non-legislative party's exercise of rulemaking authority must be viewed in light of the task necessary to accomplish the General Assembly's purpose. *Gilligan.*

In the instant case, by the creation of RAC alone, the second requirement was met as to the 2009 UCC. Pursuant to Section 304(d) of the PCCA, after RAC reviews and considers ICC's codes, if it finds that any section of ICC's codes should be excluded, L & I must exclude it when updating Pennsylvania's UCC. In addition to the creation of RAC, Section 301 of the PCCA very specifically spells out how L & I is to adopt Pennsylvania's UCC. For example, it provides the period of time in which L & I must act, what information L & I must consider (i.e., accessibility), prescribes standards to be met and which entities may weigh in as to those standards, etc. Finally, the Pennsylvania Supreme Court and this Court have held that, where proposals by private parties are required to be reviewed by a regulatory agency before they are effective, there is no unconstitutional delegation. *Pennsylvania Coal Mining Ass'n v. Ins. Dep't,* 471 Pa. 437, 370 A.2d 685 (1977); *Longwood Villa Nursing and Convalescent Home Appeal,* 26 Pa.Cmwlth. 620, 364 A.2d 976 (1976). Thus, the second requirement for the General Assembly's delegation of administrative authority has been met.

In its amended petition for review, Petitioners argued that the RAC system did not work properly in the instance of the adoption of the 2009 UCC; thus, despite whether the RAC process was intended by the General Assembly as a restraint on its delegated authority, it was not, in reality, a restraint, and therefore, the second requirement was not met. Specifically, Petitioners claim that the 2009 code revisions were substantial and not yet in book form when they were reviewed by the very newly-formed RAC, some of whose members lacked experience in the code development process. In addition, Petitioners assert that there was insufficient time for RAC to review the hundreds of changes made to ICC's codes, so it reviewed only the 22 changes for which proposals to exclude were submitted. Finally, Petitioners argue that the 2009 process was flawed because there were substantial irregularities in ICC's voting on key provisions of its codes at its September 2008 meeting (particularly related to who was eligible to vote) and that such irregularities tainted the proceedings.

■ In deciding preliminary objections in the nature of a demurrer, this Court may not consider unwarranted inferences from facts, argumentative allegations, or expressions of opinion in the pleadings. According to the pleadings in this case, it is undisputed that RAC was in place in 2009, held hearings, and received submissions from PBA on ICC's 2009 codes. Based upon such facts, this Court finds that the RAC system worked in the manner in which the General Assembly intended, and was a restraint on L & I's exercise of administrative authority. Since the PCCA's basic policy choices are clearly made by the General Assembly, and the PCCA contains adequate standards to guide and restrain the exercise of L & I's delegated functions, we hold that the General Assembly did not unconstitutionally delegate its authority over its execution

and administration of the 2009 version of Pennsylvania's UCC.

At oral argument before this Court, en banc, Petitioners argued that RAC was not given enough deference to decide what provisions of the ICC codes, if any, should be omitted from Pennsylvania's UCC; yet Petitioners conceded that they would have no difficulty if the General Assembly were to adopt and enact the ICC codes in their entirety, without any input from industry members. Since such action by the General Assembly would clearly place Petitioners in the same position in which they now find themselves, we find their argument disingenuous. Petitioners were represented at each stage of the process of L & I's adoption of the 2009 version of the UCC. The fact that their input failed to carry the day with the RAC does not make the process unconstitutional.

Accordingly, we hold that the post-RAC PCCA neither improperly delegated the General Assembly's rule-making authority, nor its authority over the execution and administration of that law, so L & I's adoption of ICC's 2009 codes as Pennsylvania's 2009 UCC did not violate Article II, Section 1 of the Pennsylvania Constitution. Since, based upon the pleadings in this case, Petitioners have not overcome their burden of demonstrating that the PCCA *clearly, palpably,* and *plainly* violated the Pennsylvania Constitution, L & I's preliminary objections must be sustained.

By sustaining L & I's preliminary objections, Petitioners' amended petition for review is dismissed and is no longer before this Court. Therefore, Petitioners' application for summary relief must be dismissed as moot.

Judge COHN JUBELIRER did not participate in the decision in this case.

### ORDER

AND NOW, this 25th day of August, 2010, the Department of Labor and Industry's preliminary objections to Petitioners' amended petition for review are sustained, and Petitioners' application for summary relief is dismissed.

### CONCURRING OPINION BY Judge LEAVITT.

I write separately to address an issue on which the Pennsylvania Builders Association focused its attention at oral argument, namely the contention that the legislature's delegation of rule-making authority to the Department of Labor and Industry was unconstitutional because it was limited in scope. Specifically, the Association believes that for the rule-making authority of the Department of Labor and Industry, Review and Advisory Council to be valid, it should have included power to amend each new proposal of the International Code Council (ICC), in addition to the power to reject or accept each new proposal.

The ICC is a private organization that studies and develops standards for residential, commercial and military buildings. One of the ICC's products was the BOCA National Building Code, which created standards for residential and commercial construction. The General Assembly adopted the ICC's BOCA National Building Code as its own when it enacted Section 301(a) of the Pennsylvania Construction Code Act (Act), Act of November 10, 1999, P.L. 491, *as amended,* 35 P.S. § 7210.301(a) (directing the Pennsylvania Department of Labor and Industry to promulgate as a regulation the 1999 BOCA National Building Code, 14th edition, as the Uniform Construction Code). All parties agree that when the legislature adopts a private organization's standards as its own, it does not offend Article II, Section

1, of the Pennsylvania Constitution,[1] which prohibits delegation of legislative authority to a private body. *Pennsylvania Chiropractic Federation v. Foster,* 136 Pa. Cmwlth. 465, 583 A.2d 844, 849 (1990) (non-delegation doctrine not offended where legislature adopts fact finding of private entity). Pursuant to Section 301(a) of the Act, the Department of Labor and Industry promulgated the Pennsylvania Uniform Construction Code, 34 Pa.Code §§ 401.1–405.42.

The ICC continues to revise and develop new standards for residential and commercial buildings. The legislature cannot adopt, sight unseen, the future work product of the ICC without offending Article II, Section 1. Accordingly, it gave the Department of Labor and Industry the authority to accept or reject the ICC's revisions with respect to the Pennsylvania Uniform Construction Code. The parties agree that the legislature made the basic policy choices to guide the Department's decision to accept or reject new work of the ICC and, where accepted, to add the ICC revision to the Uniform Construction Code. The Association's contention is that the legislature did not delegate enough legislative authority to the Department because it cannot modify ICC revisions.

The General Assembly's decision to limit the Department's authority was purposeful. If the legislature had conferred the authority upon the Department to rewrite new proposals of the ICC, then the Department would be free to completely rewrite Pennsylvania's Uniform Construction Code. By restricting the ability of the Department to change the Uniform Construc-

tion Code, the legislature advanced its goal of minimizing changes to the BOCA National Building Code, which it had adopted for Pennsylvania in Section 301(a) of the Act, 35 P.S. § 7210.301(a).

The Association cites no authority for its contention that for a delegation of rule-making authority to an agency to be valid, all the powers of the legislature must be delegated to the agency. The Association's argument is interesting, but not convincing. It is a legislative determination whether, or how much, rule-making authority to give an agency charged with enforcement of a statute.

---

1. It states:
 The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives.
 Pa. Const. art. II, § 1. This provision is the source of the "non-delegation doctrine,"

which forbids the General Assembly from delegating legislative authority to, *inter alia,* private persons. *See, e.g., Insurance Federation of Pennsylvania, Inc. v. Department of Insurance,* 585 Pa. 630, 634, 889 A.2d 550, 553 (2005).