# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania AFL-CIO, by its : 
Trustees ad litem, Richard W. : 
Bloomingdale and Frank Snyder, : 
                  Petitioners : 
                   : 
                   : 
           v. : No. 62 M.D. 2019
                   : Argued: September 10, 2019
Commonwealth of Pennsylvania, : 
Governor Tom Wolf, in his official : 
capacity; W. Gerard Oleksiak, : 
Secretary of the Department of Labor : 
and Industry, in his official capacity, : 
                Respondents : 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION BY
JUDGE COHN JUBELIRER             FILED: October 11, 2019

Before this Court in its original jurisdiction are the Preliminary Objections (POs) of the Commonwealth of Pennsylvania, Governor Tom Wolf, in his official capacity, and W. Gerard Oleksiak, Secretary of the Department of Labor and Industry, in his official capacity (together, Commonwealth), to the Petition for Review in the Nature of a Request for Declaratory Relief and Preliminary and Permanent Injunctive Relief (Petition for Review) filed by the Pennsylvania AFL-CIO, by its Trustees ad litem, Richard W. Bloomingdale and Frank Snyder (PA AFL-CIO). In the Petition for Review, PA AFL-CIO asserts that Section 306(a.3)

of the Workers' Compensation Act[1] (Act), which provides for impairment rating evaluations (IRE) and was enacted by the General Assembly and signed by Governor Wolf in 2018, violates article II, section 1 of the Pennsylvania Constitution[2] because it constitutes an unlawful delegation of the General Assembly's legislative authority. Also before the Court is the Application to Intervene of the Leaders of the Pennsylvania House of Representatives (Application)[3] filed pursuant to Pennsylvania Rule of Civil Procedure 2327(4), Pa.R.C.P. No. 2327(4). House Leaders assert they have a legally enforceable interest that may be affected by the resolution of the Petition for Review and should be allowed to intervene to protect that interest.

Our Supreme Court found Section 306(a.2), the predecessor to Section 306(a.3), unconstitutional under article II, section 1 in *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827 (Pa. 2017) (*Protz II*). Before the Court is the Commonwealth's demurrer to PA AFL-CIO's claim that Section 306(a.3) suffers from the same constitutional infirmity. Having carefully reviewed the Petition for Review, the POs, and our Supreme Court's decision in *Protz II*, we conclude PA AFL-CIO has not stated a legally sufficient claim under article II, section 1, and, therefore, we sustain the

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, added by Section 1 of the Act of October 24, 2018, P.L. 714, 77 P.S. § 511.3.

[2] PA. CONST. art. II, § 1 ("[T]he legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives.").

[3] Specifically, the Application seeks intervention on behalf of Speaker of the House Michael C. Turzai, Majority Leader Bryan D. Cutler, House Majority Whip Kerry A. Benninghoff, Chair of the House Appropriations Committee Stan E. Saylor, Chair of the House Majority Caucus Marcy Toepel, Secretary of the House Majority Caucus Mike Reese, Administrator of the House Majority Caucus Kurt A. Masser, and Chair of the House Policy Committee Donna Oberlander (collectively, House Leaders). House Leaders have submitted their own preliminary objections for consideration if their Application is granted.

Commonwealth's POs, dismiss the Petition for Review, and dismiss the Application as moot.

## I. Background

### A. *Section 306(a.2) of the Act*

In 1996, the General Assembly enacted Section 306(a.2) of the Act,[4] which allowed employers to require workers' compensation (WC) claimants to undergo

---

[4] Added by Section 4 of the Act of June 24, 1996, P.L. 350, 77 P.S. § 511.2, repealed by Section 1 of the Act of October 24, 2018, P.L. 714. Section 306(a.2) was found unconstitutional by this Court in *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 124 A.3d 406 (Pa. Cmwlth. 2015) (*Protz I*), *aff'd in part*, 161 A.3d 827 (Pa. 2017). Relevantly, Section 306(a.2)(1), (2) provided:

(1)     When an employe has received total disability compensation pursuant to clause (a) for a period of one hundred four weeks, unless otherwise agreed to, the employe shall be required to submit to a medical examination which shall be requested by the insurer within sixty days upon the expiration of the one hundred four weeks to determine the degree of impairment due to the compensable injury, if any. The degree of impairment shall be determined based upon an evaluation by a physician who is licensed in this Commonwealth, who is certified by an American Board of Medical Specialties approved board or its osteopathic equivalent and who is active in clinical practice for at least twenty hours per week, chosen by agreement of the parties, or as designated by the department, pursuant to the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment."

(2)     If such determination results in an impairment rating that meets a threshold impairment rating that is equal to or greater than fifty per centum impairment under the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment," the employe shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits under clause (a). If such determination results in an impairment rating less than fifty per centum impairment under the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment," the employe shall then receive partial

3

an IRE, during which a physician would determine the claimant's "degree of impairment" that was attributable to the claimant's compensable injury. *Formerly* 77 P.S. § 511.2(1). Under this section, the physician was to make this assessment by applying the methodology set forth in "the most recent edition" of the American Medical Association's (AMA) *Guide to the Evaluation of Permanent Impairment* (*Guides*). *Id.* If the result of the IRE was a whole-body impairment rating of less than 50 percent, the claimant's benefits would be modified from total disability to partial disability. While this change did not alter the amount of weekly benefits the claimant received, it did cap the receipt of those benefits to 500 weeks. *Formerly* 77 P.S. § 511.2(2). At the time Section 306(a.2) was enacted, the "most recent edition" of the *Guides* was the Fourth Edition. As time passed, however, the AMA issued two new editions, the Fifth Edition and Sixth Edition. Each new edition meant that claimants who underwent IREs were subject to the newest edition's methodology.

B.     *Constitutional Challenge to Section 306(a.2)*

In 2011, Mary Ann Protz underwent an IRE, using the Sixth Edition of the *Guides*, at the request of her employer, Derry Area School District (Derry), the result of which was a 10-percent impairment rating. *Protz II*, 161 A.3d at 830. Based on the IRE, a Workers' Compensation Judge modified Protz's benefits from total to partial. Protz challenged this modification on the basis that the General Assembly unconstitutionally delegated to the AMA the authority to establish the

---

disability benefits under clause (b): Provided, however, That no reduction shall be made until sixty days' notice of modification is given.

*Formerly* 77 P.S. § 511.2(1), (2).

criteria for evaluating a claimant's permanent impairment when it required that the "most recent edition" of the *Guides* be used. This Court agreed, holding that only the General Assembly has the power to make laws and cannot, constitutionally, delegate that power to any other branch of the government or other entity. *Protz v. Workers' Comp. Appeal Bd. (Derry Area Sch. Dist.)*, 124 A.3d 406, 416 (Pa. Cmwlth. 2015) (*Protz I*), *aff'd in part by Protz II*. By requiring the use of "the most recent edition" of the *Guides*, we explained, the General Assembly had, without making basic policy choices related to the issue of impairment or providing adequate standards to guide and restrain the AMA, delegated its authority to make laws to the AMA. *Id.* at 415-16. This Court further concluded that, even if the General Assembly had made those policy choices and provided adequate standards, the delegation was constitutionally infirm because the AMA was a private organization. *Id.* at 416. To remedy this constitutional violation, we did not strike Section 306(a.2) in its entirety, instead holding that all IREs had to be performed using the Fourth Edition of the *Guides*, the version that existed at the time Section 306(a.2) was enacted.

Protz and Derry appealed to the Supreme Court, which affirmed in part and reversed in part. After reviewing "the heart of the non-delegation doctrine," the Supreme Court held the General Assembly had delegated its authority to the AMA without "favor[ing] any particular policies relative to the *Guides*' methodology for grading impairments" or "prescrib[ing] any standards to guide and restrain the AMA's discretion to create such a methodology." *Protz II*, 161 A.3d at 835. Observing that the AMA could revise the *Guides* at any time, adding new chapters or removing existing chapters, which would then have to be used by physicians in the IRE process, the Supreme Court held that the General Assembly had given

"AMA *de facto*, unfettered control over a formula that ultimately will determine whether a claimant's partial[]disability benefits will cease after 500 weeks." *Id.* at 835-36. It similarly noted that the General Assembly has not "include[d] in Section 306(a.2) any of the procedural mechanisms that [the] Court has considered essential to protect against 'administrative arbitrariness and caprice,'" including the holding of hearings, taking public comments, or explaining the bases for its methodology. *Id.* at 836. As for the AMA's private status, the Supreme Court explained there was tension in the jurisprudence regarding whether delegation to a private entity would be constitutional, which did not need to be resolved at that time. However, it expressed that its decision "should not be read as an endorsement or rejection of the Commonwealth Court's view that" such delegation "is *per se* unconstitutional." *Id.* at 838.

The remedy for the violation of the non-delegation clause, the Supreme Court concluded, was not to revert to the Fourth Edition of the *Guides*, but to strike down Section 306(a.2) in its entirety because the unconstitutional provisions could not be separated from the valid provisions. *Id.* at 841. In response to the argument that the Fourth Edition, the edition in effect at the time of Section 306(a.2)'s enactment, should be used, the Supreme Court held it would "beggar[] belief that the General Assembly would have used the words 'most recent edition' when it really meant 'Fourth Edition.'" *Id.* at 839. Thus, the Supreme Court reversed that part of *Protz I*.

6

*C.    Section 306(a.3) of the Act*

After the Supreme Court's decision in *Protz II*, the General Assembly repealed Section 306(a.2) and enacted Section 306(a.3).  Section 306(a.3) provides, in pertinent part:

> (1)    When an employe has received total disability compensation pursuant to clause (a) for a period of one hundred and four weeks, unless otherwise agreed to, the employe shall be required to submit to a medical examination which shall be requested by the insurer within sixty days upon the expiration of the one hundred and four weeks to determine the degree of impairment due to the compensable injury, if any.  The degree of impairment shall be determined based upon an evaluation by a physician who is licensed in this Commonwealth, who is certified by an American Board of Medical Specialties-approved board or its osteopathic equivalent and who is active in clinical practice for at least twenty hours per week, chosen by agreement of the parties, or as designated by the department, **pursuant to the American Medical Association "Guides to the Evaluation of Permanent Impairment," 6th edition (second printing April 2009)**.

> (2)    If such determination results in an impairment rating that meets a threshold impairment rating that is equal to or greater than thirty-five per centum impairment under the **American Medical Association "Guides to the Evaluation of Permanent Impairment," 6th edition (second printing April 2009)**, the employe shall be presumed to be totally disabled and shall continue to receive total disability compensation benefit under clause (a).  If such determination results in an impairment rating less than thirty-five per centum impairment under the **American Medical Association "Guides to the Evaluation of Permanent Impairment," 6th edition (second printing April 2009)**, the employe shall then receive partial disability benefits under clause (b); Provided, however, That no reduction shall be made until sixty days' notice of modification is given.
> . . . .

7

77 P.S. § 511.3(1), (2) (emphasis added). Section 306(a.3) changed the IRE process from the pre-*Protz II* process in two ways: (1) it reduced the threshold impairment rating from 50 percent to 35 percent; and (2) IRE determinations were to be made "pursuant to the American Medical Association 'Guides to the Evaluation of Permanent Impairment,' 6th edition (second printing April 2009)" rather than "pursuant to the most recent edition of the American Medical Association 'Guides to the Evaluation of Permanent Impairment.'" *Compare* 77 P.S. § 511.3, *with former* 77 P.S. § 511.2.

## II. The Current Petition for Review and Responses

### A. *Petition for Review*

On February 5, 2019, PA AFL-CIO filed the instant Petition for Review under the Declaratory Judgments Act, 42 Pa. C.S. §§ 7531-7541, seeking declaratory (Count I) and injunctive relief (Count II). The PA AFL-CIO alleges that "[d]ue to this amendment to the Act, workers represented by the PA AFL-CIO will lose [WC] annuity benefits." (Petition at 4.) PA AFL-CIO, through its various affiliated local unions, councils, and federations, represents more than 800,000 workers throughout the Commonwealth, including "workers who have been, or could be, subject to workplace injury and/or disease." (*Id.* ¶ 2.) On this basis, PA AFL-CIO claims it has "associational standing to assert state constitutional claims on behalf of its represented bargaining unit employees." (*Id.* ¶ 3.) PA AFL-CIO brought this action against the Governor and the Secretary as they "possess the authority to generate and implement decisions and policies on behalf of the Commonwealth, including over the administration and enforcement of the . . . Act." (*Id.* ¶ 7.)

8

The Petition for Review contends that, through Section 306(a.3)'s use of the "American Medical Association 'Guides to the Evaluation of Permanent Impairment,' 6th edition (second printing April 2009)," language similar to that used in former Section 306(a.2), the General Assembly has, again, violated article II, section 1 of the Pennsylvania Constitution. This amended language, PA AFL-CIO asserts, delegates the General Assembly's legislative function to the AMA, a private entity. It did so without "mak[ing] 'the basic policy choices,'" or establishing "adequate standards which will guide and restrain the exercise of the delegated administrative functions," as required by *Protz II*, to render such delegation constitutionally valid. (Petition ¶ 37 (quoting *Protz II*, 161 A.3d at 834).) Further, PA AFL-CIO avers that nothing in Section 306(a.3) requires the AMA to "hold hearings, accept public comments, or explain the grounds for its methodology in a reasoned opinion, which then could be subject to judicial review" nor are the "physicians who author the *Guides* . . . public employees who may be subject to discipline or removal," yet another reason, PA AFL-CIO maintains, Section 306(a.3) is unconstitutional. (*Id.* ¶¶ 40-41 (quoting *Protz II*, 161 A.3d at 836).) Finally, PA AFL-CIO challenges the General Assembly's delegation of its legislative authority to a private entity, the AMA, "which is[] 'isolated from the political process, and, . . . [is] shielded from political accountability.'" (*Id.* ¶ 42 (quoting *Protz II*, 161 A.3d at 837).) Based on these claims, PA AFL-CIO seeks a declaration that Section 306(a.3) violates article II, section 1 because the General Assembly impermissibly delegated its legislative authority. It also requests a preliminary and permanent injunction to enjoin the enforcement of Section 306(a.3), maintaining that it satisfies the requirements for obtaining such relief.

## B. *The Commonwealth's POs*

The Commonwealth filed its POs in the nature of a demurrer, asserting that the Petition for Review should be dismissed because it is legally insufficient. In its demurrer to Count I seeking declaratory relief, the Commonwealth contends that there has been no improper delegation to the AMA because "physicians are limited to using the standards set forth in the [Sixth] Edition, second printing – regardless of future editions being printed or changes being made to the current edition." (POs ¶ 18.) According to the Commonwealth, in enacting Section 306(a.3) and specifically identifying the Sixth Edition, second printing, which was already in existence at the time of enactment, the General Assembly adopted that edition as the standard for determining a claimant's impairment rating. (*Id.* ¶ 24.) The adoption of existing standards, the Commonwealth asserts, is permissible under *Protz II* and is not an improper delegation of the General Assembly's legislative functions. As there has been "no delegation of [the General Assembly's] rule-making authority to the AMA," the Commonwealth contends, "there is no violation of the non-delegation doctrine . . . ," and the Petition for Review is without merit. (*Id.* ¶¶ 20, 25-26.) For the same reasons, the Commonwealth asserts in its demurrer to Count II, the Petition for Review is legally insufficient to state a claim for injunctive relief. (*Id.* ¶¶ 30-34.)

PA AFL-CIO filed an Answer in which it denied many of the Commonwealth's averments as being conclusions of law. It did, however, admit that the Sixth Edition of the *Guides* was in existence in 2018 when the General Assembly enacted Section 306(a.3). (Answer ¶ 19.) PA AFL-CIO further admitted that "the General Assembly adopted the [Sixth] Edition, second printing,

of the AMA's *Guides*" in Section 306(a.3).  (*Id.* ¶ 24 (emphasis added).)  PA AFL-CIO responds to the averments in the demurrer to Count II by denying that the Sixth Edition, second printing, "constitute[d] standards that were already in existence" and that the General Assembly's adoption thereof did not violate article II, section 1 of the Pennsylvania Constitution.  (*Id.* ¶ 32.)

## III.  Analysis

"[I]n ruling on . . . preliminary objections, we must accept as true all well-pleaded material allegations in the petition for review" and any reasonable inferences that may be drawn from those averments.  *Meier v. Maleski*, 648 A.2d 595, 600 (Pa. Cmwlth. 1994).  We are not, however, bound by legal conclusions, expressions of opinion, unwarranted inferences from facts, or argumentative allegations.  *Id.*  We may sustain preliminary objections only where the law makes clear that the petitioner cannot succeed on the claim, resolving any doubt in the petitioner's favor.  *Id.*  "We review preliminary objections in the nature of a demurrer under the above guidelines and may sustain a demurrer only when a petitioner has failed to state a claim for which relief may be granted."  *Armstrong Cty. Mem'l Hosp. v. Dep't of Pub. Welfare*, 67 A.3d 160, 170 (Pa. Cmwlth. 2013).

Article II, section 1 of the Pennsylvania Constitution states:  "The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives."  PA. CONST. art. II, § 1.  To avoid violating this provision, the General Assembly must make the "basic policy choices involved in [its] 'legislative power'" when it authorizes some other entity to act.  *Protz II*, 161 A.3d at 833.  This restriction services dual purposes:  "it ensures that duly authorized and politically responsible officials make all of the necessary policy decisions, as is their mandate per the electorate," and it

11

"protect[s] against the arbitrary exercise of unnecessary and uncontrolled discretionary power." *Id.* (citation omitted). The restriction on delegation is not absolute, however, and the General Assembly may "assign the authority and discretion to execute or administer a law" to some other entity if it makes "the basic policy choices" and "include[s] 'adequate standards which will guide and restrain the exercise of the delegated administrative functions.'" *Id.* at 833-34 (quoting *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, 877 A.2d 383, 418 (Pa. 2005) (*PAGE*)). Accordingly, a "law must contain some intelligible principle to which the person or body authorized to [act] is directed to conform." *Id.* at 834 (internal quotation marks and citation omitted) (alteration in the original). Further, a law must include "procedural mechanisms that serve to limit or prevent the arbitrary and capricious exercise of the delegated power." *Id.*

In *Protz II*, our Supreme Court applied these standards to conclude that Section 306(a.2) was an impermissible delegation of the General Assembly's legislative authority to the AMA because that provision did not include **any** standards or basic policy choices to restrain the AMA's **future enactment** of the *Guides*, which would **then become the law** by which IREs would be performed. *Id.* at 835-36. This left the AMA with the ability to "**revise** the *Guides* once every ten years or once every ten weeks," which "gave the AMA *de facto*, **unfettered control** over a formula that ultimately will determine whether a claimant's partial[]disability benefits will cease after 500 weeks." *Id.* at 835-36 (emphasis added). Because Section 306(a.2) failed to meet even the basic requirements for a permissible delegation, the Supreme Court did not address the question of whether the General Assembly's delegation to a "private entity" could ever validly occur.

12

Although it cited precedent raising concerns about such delegations, including the lack of political accountability of a private entity, it also cited other precedent that did not rule out the constitutional propriety of those delegations. *Id.* at 837-38.

However, if the General Assembly **adopts an existing set of standards** as its own, there is **no delegation** and no violation of article II, section 1 of the Pennsylvania Constitution. As our Supreme Court in *Protz II* explained:

> it is important to clarify that **the non-delegation doctrine does not prevent the General Assembly from adopting as its own a particular set of standards which already are in existence at the time of adoption**. However, for the reasons we have explained, **the non-delegation doctrine prohibits** the General Assembly from **incorporating**, **sight unseen**, **subsequent modifications** to such standards **without also providing adequate criteria to guide and restrain the exercise of the delegated authority**.

*Id.* at 838-39 (citing *PAGE*, 877 A.2d at 418) (emphasis added).

PA AFL-CIO claims that the General Assembly has delegated its authority to the AMA, as it had in Section 306(a.2), despite the AMA being a private entity that is not subject to political process and without making the basic policy decisions and imposing adequate standards to restrain the AMA's discretion to act. Although PA AFL-CIO admits that the Sixth Edition, second printing, was in existence at the time of Section 306(a.3)'s enactment, it asserts this enactment did not favor any particular policies as to the *Guides'* methodology and use by the IRE physician and, therefore, "was not an exercise in policymaking, but a careless attempt to correct its error with [Section 306(a.2)]." (PA AFL-CIO's Brief (Br.) at 15; *see also* PA AFL-CIO's Suppl. Br. at 9-10.) Further, PA AFL-CIO contends the adoption of the Sixth Edition, second printing, without evidence that the AMA "h[e]ld hearings, accept[ed] public comments, or explain[ed] the grounds for its

13

methodology," reflects that the General Assembly did not make the basic policy choices or standards to guide and restrain the AMA's action. (*Id.* at 16 (quoting *Protz II*, 161 A.3d at 836) (alterations in original); *see also* PA AFL-CIO's Suppl. Br. at 10-11.) PA AFL-CIO contends this lack of guidance is similar to that found unconstitutional in *West Philadelphia Achievement Charter Elementary School v. School District of Philadelphia*, 132 A.3d 957 (Pa. 2016), in which the Supreme Court held that the delegation of authority to the School Reform Commission for the School District of Philadelphia to, among other things, suspend regulations and statutory requirements to improve the school district's finances was unconstitutional because "it did not include concrete measures to channel the [School Reform] Commission's discretion to wield its suspension power, nor . . . safeguards to protect against arbitrary, ad hoc decision making . . . ." (AFL-CIO's Br. at 18 (quoting *Protz II*, 161 A.3d at 834-35).)

While PA AFL-CIO's arguments raise important points as to non-delegation, those points are not applicable here because, as the Commonwealth responds, **no delegation** to the AMA occurred in the enactment of Section 306(a.3). As clarified by the Supreme Court in *Protz II*, it is the **adoption**, "**sight unseen**" of **future** standards or editions, without guidance by the General Assembly as to the basic policy decisions and standards to restrain the discretion of the entity setting those standards that is problematic. 161 A.3d at 839 (emphasis added).

For example, this Court recently invalidated certain statutory provisions related to the sale of fireworks in certain locations as violating the non-delegation doctrine. In *Phantom Fireworks Showrooms, LLC v. Wolf*, 198 A.3d 1205, 1228 (Pa. Cmwlth. 2018), the statutory provision at issue referenced future standards of

14

a private entity's code by using the phrase "or any subsequent edition," without including any guidelines or standards to restrain the private entity's future enactments. *Id.* at 1213. We held that the use of the phrase "any subsequent edition" suffered the same constitutional infirmity as Section 306(a.2) of the Act and, under *Protz II*, was an unconstitutional delegation because it allowed the private entity "to create, alter, or remove, as frequently or infrequently as it chooses, any standard it chooses . . . ." *Id.* at 1227-28.

In contrast, we held in *Pennsylvania Builders Association v. Department of Labor and Industry*, 4 A.3d 215, 224-26 (Pa. Cmwlth. 2010), that the General Assembly did not violate the non-delegation doctrine when it delegated the authority to adopt the Uniform Construction Code (UCC), *see* 34 Pa. Code §§ 401-401.16, 403.1-403-142, including future editions, to the Department of Labor and Industry (L & I) and International Code Council (ICC). This was because, when it did so, the General Assembly made the basic policy choices and imposed definite and reasonable standards for the adoption of future revisions. One such standard was the General Assembly's establishment of a review and advisory council, made up of construction industry representatives, which reviewed and evaluated any changes to the UCC and made recommendations as to whether the changes were consistent with Pennsylvania's law or inappropriate for inclusion in that law. If the advisory council recommended that a change was inappropriate, L & I was required to exclude that change when it adopted the most recent edition of the UCC. *Pennsylvania Builders Ass'n*, 4 A.3d at 218, 222. Such process meant that there was no adoption of the ICC codes "sight unseen." *Id.* at 222. Further, the General Assembly provided criteria to be used by the advisory council to determine whether changes to the UCC should be omitted from Pennsylvania's

law, another means of restricting the scope of the delegated authority. *Id.* Having made the basic policy choices and imposed reasonable standards on the delegated authority, we held the General Assembly did not violate article II, section 1 of the Pennsylvania Constitution. *Id.* at 223-24.

The non-delegation doctrine **does not prohibit** the General Assembly from "adopting as its own a particular set of standards which **already are in existence** at the time of adoption." *Protz II*, 161 A.3d at 838 (emphasis added). That is what the General Assembly did here – it adopted the Sixth Edition, second printing, which PA AFL-CIO admits was **in existence** when Section 306(a.3) was enacted, "as its own." *Id.* When such an adoption occurs, the General Assembly is exercising its legislative and policy making authority by deciding that it is those particular standards that will become the law of this Commonwealth. It is not delegating its authority to legislate. The General Assembly made a policy decision regarding the standards that will apply to IREs in the Commonwealth going forward. PA AFL-CIO may disagree with that policy decision, but that does not make that decision an improper delegation of the General Assembly's legislative authority.

While PA AFL-CIO points to concerns regarding **the AMA's** process of enacting its standards, these have little bearing on the General Assembly's actions in specifically adopting as law a particular, existing set of standards. The standards adopted were not "unseen" or unknown to the General Assembly at the time it enacted Section 306(a.3). Moreover, these adopted standards **will remain the standards by which impairment ratings are determined unless** or until **the General Assembly revisits the issue and amends the WC Act** to change those standards. **The AMA's future actions** in revising the *Guides*, whether next

16

month, next year, or in 10 years, **will have no effect** on the status of IRE determinations in Pennsylvania **absent future action by the General Assembly**. Thus, Section 306(a.3) is significantly different than Section 306(a.2) and the challenged legislation in *West Philadelphia Achievement Charter Elementary School* and *Phantom Fireworks*. This is also different from the discussion in *Protz II* regarding the delegation of authority to a private entity. *Protz II*, 161 A.3d at 837-38. The cases cited by *Protz II* describe the delegation of future action, such as making governmental appointments, *Hetherington v. McHale*, 329 A.2d 250, 254 (Pa. 1974), and exercising regulatory power, *Olin Mathieson Chemical Corporation v. White Cross Stores, Inc.*, 199 A.2d 266, 267-68 (Pa. 1964), or authority over chiropractic continuing education, *State Board of Chiropractic Examiners v. Life Fellowship of Pennsylvania*, 272 A.2d 478, 479 (Pa. 1971). Here, it is the General Assembly that adopted the standards, and, importantly, unlike the AMA, the General Assembly clearly is not isolated from the political process and shielded from political accountability for its actions.

As for PA AFL-CIO's assertions that Section 306(a.3) does not restrain or guide IRE physicians on how to use the Sixth Edition, the proper application of the Sixth Edition, second printing's standards would be a question answered during a challenge to an IRE's results. The *Guides* establish a standard methodology for grading medical impairments, which is used by WC systems in the federal government, 44 states, and 2 commonwealths to measure a worker's medical impairment. *Protz II*, 161 A.3d at 835 n.3. It is apparent from Section 306(a.3) that an IRE physician is to utilize the *Guides*' methodology, along with the results of the physician's review of the worker's medical condition, to ascertain the degree of the worker's medical impairment attributable to the work-related injury. These

17

determinations are not made in a vacuum, but are made within the existing WC administrative framework, which requires IRE physicians to submit written documentation to support their conclusions and allows for administrative and judicial challenges to those conclusions. *See, e.g.*, Section 306(a.3)(4), 77 P.S. § 511.3(4) (setting forth a claimant's right to appeal IRE results); 34 Pa. Code § 123.105(c) (requiring IRE physicians to complete various forms and reports related to the IRE's results), (d)(5) (providing the right to appeal the adjustment of a claimant's benefit status by filing a petition for review); *Duffey v. Workers' Comp. Appeal Bd. (Trola-dyne, Inc.)*, 152 A.3d 984, 990-91 (Pa. 2017) (holding that, in performing an IRE, a physician must apply professional judgment to assess conditions that could be fairly attributable to a compensable injury and the failure to exercise that judgment may render the IRE invalid). PA AFL-CIO's attempt to inject uncertainty into an otherwise clear provision and established administrative process is not a reasonable reading of Section 306(a.3).

For the foregoing reasons, we agree with the Commonwealth that the Petition for Review is legally insufficient and does not state a claim that Section 306(a.3) violates article II, section 1 of the Pennsylvania Constitution. Accordingly, we sustain the Commonwealth's demurrer to Count I of the Petition for Review.

We next consider the Commonwealth's demurrer to Count II to determine whether PA AFL-CIO has stated a legally sufficient claim in Count II, which seeks to enjoin the use of Section 306(a.3). A preliminary injunction will issue where the petitioner establishes: (1) the injunctive relief "is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages"; (2) greater injury will occur from refusing to grant the injunction than

18

from granting it; (3) the injunction will restore the parties to the status quo as it existed before the alleged wrongful conduct; (4) the activity that is sought to be restrained is actionable, the petitioner's right to relief is clear, and the wrong is manifest, or, in short, that the petitioner is likely to succeed on the merits; (5) the injunction "is reasonably suited to abate the offending activity"; and (6) the public interest will not be harmed by granting the injunction. *Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1001 (Pa. 2003). A preliminary injunction "is to be granted only when and if each [factor] has been fully and completely established." *Pa. AFL-CIO by George v. Commonwealth*, 683 A.2d 691, 694 (Pa. Cmwlth. 1996) (emphasis omitted).

PA AFL-CIO asserts it has satisfied each of these factors and, therefore, the IRE process set forth in Section 306(a.3) must be enjoined. It additionally argues that it would be premature to consider denying preliminary injunctive relief at this stage of the proceedings. (PA AFL-CIO's Suppl. Br. at 15 n.3.) However, having concluded that PA AFL-CIO has failed to state a claim that Section 306(a.3) violates article II, section 1 of the Pennsylvania Constitution in Count I, it necessarily follows that PA AFL-CIO cannot establish that its right to relief is clear, which is a required element for injunctive relief. Therefore, its request for injunctive relief also is legally insufficient. Thus, we sustain the Commonwealth's demurrer to Count II of the Petition for Review.

Having sustained the POs to Counts I and II, we dismiss the Petition for Review.[5]

---

[5] House Leaders seek to intervene pursuant to Pennsylvania Rule of Civil Procedure 2327(4) asserting that they have a legally enforceable interest in this action that may be affected by a determination on this Petition for Review. When "there is a discernible and palpable infringement on their authority as legislators," "members of the General Assembly have [a] sufficient interest to participate in a legal action in their official capacity and based upon their

19

## IV.    Conclusion

Because the General Assembly did not delegate its legislative authority when it enacted Section 306(a.3), but adopted existing standards as its own in the exercise of its power to legislate, PA AFL-CIO has not stated a legally sufficient claim for declaratory or injunctive relief. Accordingly, the Commonwealth's POs are sustained and the Petition for Review is dismissed. Having dismissed the

---

authority" as legislators. (Application ¶ 9 (quoting *Robinson Twp. v. Commonwealth*, 84 A.3d 1054, 1055 (Pa. 2014) (plurality)).) Central to the determination in this matter, House Leaders aver, is whether the General Assembly has impermissibly delegated its authority to the AMA when it adopted the Sixth Edition, second printing, of the *Guides*, which could have implication on their ability in the future to "enact a statute that incorporates by reference a particular iteration of a private organization's published collection of standards." (*Id.* ¶¶ 23-24.) PA AFL-CIO's Petition for Review, they argue, is "a direct constitutional attack on [the] way that the General Assembly exercised its legislative authority." (*Id.* ¶ 25.) In addition, House Leaders maintain that their interests are not being adequately represented by the current Respondents, as they are not members of the General Assembly and do not share House Leaders' interest.

Both the Commonwealth and PA AFL-CIO, which adopts the Commonwealth's brief in opposition as its own, oppose granting the Application on the basis that House Leaders lack the requisite standing to intervene. They assert there is no "special category of standing for legislators" and that House Leaders cannot participate in this litigation because there has been no "discernible and palpable infringement on their authority as legislators." (The Commonwealth's Br. in Opposition to Application at 4 (quoting, respectively, *Fumo v. City of Philadelphia*, 972 A.2d 487, 501 (Pa. 2009); *Pittsburgh Palisades Park, LLC v. Commonwealth*, 888 A.2d 655, 600 (Pa. 2005)).) The constitutional challenge here to Section 306(a.3), the Commonwealth and PA AFL-CIO assert, does not "affect [House Leaders'] rights to vote" or "diminish or deprive them of their power as legislators" and, therefore, there is no usurpation of House Leaders' legislative authority that would provide them with standing. (*Id.* at 7-8.) The Commonwealth and PA AFL-CIO further argue that House Leaders' claims based on defending the constitutionality of the challenged provision are likewise insufficient to establish standing. (*Id.* at 8-9 (citing *Robinson Twp.*, 84 A.3d at 1055).) Finally, they maintain House Leaders cannot demonstrate standing through aggrievement because House Leaders are not being deprived of their legislative authority.

As House Leaders acknowledged during argument, we would not need to decide the Application if the Commonwealth's POs are sustained and the Petition for Review is dismissed. Because that is the disposition, the Application is dismissed as moot.

Petition for Review based on the Commonwealth's POs, the Application of House Leaders to intervene is dismissed as moot.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania AFL-CIO, by its     :
Trustees ad litem, Richard W.     :
Bloomingdale and Frank Snyder,     :
            Petitioners     :
    :
    :
          v.     :    No. 62 M.D. 2019
    :
Commonwealth of Pennsylvania;     :
Governor Tom Wolf, in his official     :
capacity; W. Gerard Oleksiak,     :
Secretary of the Department of Labor     :
and Industry, in his official capacity,     :
            Respondents     :

# O R D E R

**NOW**, October 11, 2019, the Preliminary Objections in the Nature of Demurrer filed by Respondents are **SUSTAINED**, and the Petition for Review is **DISMISSED**. The Application to Intervene pending before this Court in this matter is **DISMISSED AS MOOT**.

 

 

_____
**RENÉE COHN JUBELIRER,** Judge