IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| City of Philadelphia, | : | | |
| Petitioner | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| Joseph Healey (Workers' | : | | |
| Compensation Appeal Board), | : | No. 1158 C.D. 2021 | |
| Respondent | : | Argued: March 8, 2023 | |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE ELLEN CEISLER, Judge
                 HONORABLE LORI A. DUMAS, Judge
                 HONORABLE STACY WALLACE, Judge

OPINION BY
JUDGE COVEY                                    FILED:  June 21, 2023

       The City of Philadelphia (Employer) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) September 22, 2021 order affirming the WC Judge's (WCJ) November 5, 2020 decision that granted Joseph Healey's (Claimant) Claim Petition for WC benefits (Claim Petition).[1] Employer presents one issue for this Court's review:

> [W]hether a claim made pursuant to Section 108(r) [of the
> WC Act (Act), which was added to the Act by what is

---

[1] The WCJ ordered Employer to pay Claimant wage loss benefits from July 13, 2016 through September 23, 2017, December 6, 2017 through December 20, 2017, and January 8, 2018 through February 1, 2018, plus 10% statutory interest, but suspended wage loss benefits effective February 2, 2018. The WCJ further ordered Employer to pay a 15% counsel fee to Claimant's counsel, payable from Claimant's share of compensation. Finally, the WCJ ordered Employer to reimburse Claimant's litigation costs of $4,075.33. *See* Attachments to Employer's Br., WCJ Dec. at 19.

commonly known as Act 46,[2]] can be based on a carcinogen that was designated as Group 1 by the [International Agency for Research on Cancer (]IARC[)[3]] after Act 46 became law on July [7], 2011.[4]

Employer Br. at 4. After review, this Court affirms.

Employer hired Claimant as a firefighter in 2003. Employer promoted Claimant to Lieutenant in 2013. In June 2016, Claimant underwent medical testing which revealed a mass on his kidney. Claimant was out of work from July 13 to September 23, 2016. On July 21, 2016, Claimant was diagnosed with clear cell renal carcinoma. Claimant developed some complications requiring him to undergo a cryoablation on the same kidney, which resulted in him being out of work again from December 6 to December 20, 2017. Claimant subsequently developed a hernia at one of the incision sites which necessitated surgery and required him to be out of work again from January 8 to February 1, 2018.

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, added by Section 1 of the Act of July 7, 2011, P.L. 251 (Act 46), 77 P.S. § 27.1(r). Section 108(r) of the Act was immediately effective on July 7, 2011.

[3] The [IARC] is a specialized research group within the World Health Organization that attempts to identify the causes of human cancers. The agency evaluates various agents, mixtures, and exposures, and classifies them into one of five groups. **Group 1 substances are considered "carcinogenic to humans;" Group 2a substances are "probably carcinogenic to humans**;" Group 2b substances are "possibly carcinogenic to humans;" Group 3 substances are "not classifiable as to human carcinogenicity;" and Group 4 substances are "probably not carcinogenic to humans." *See* IARC Monographs on the Evaluation of Carcinogenic Risks to Humans, WORLD HEALTH ORGANIZATION, http://monographs.iarc.fr/ENG/Classification.

*City of Phila. Fire Dep't v. Workers' Comp. Appeal Bd. (Sladek)*, 195 A.3d 197, 200 n.4 (Pa. 2018) (emphasis added).

[4] Notably, Claimant represented in the Claim Petition that he was seeking WC benefits for an occupational disease (i.e., renal cancer suffered by a firefighter), but *did not* specify that he was seeking benefits under Section 108(*r*) of the Act. *See* Certified Record Item 2 at 2-3.

2

On May 31, 2019, Claimant filed the Claim Petition asserting that his employment as a firefighter, fighting house, residential, and car fires, for 13 years exposed him to pressure treated wood, diesel fuel emissions, inorganic arsenic, and soot, plus diesel fuel emissions at firehouses and firegrounds from the fire apparatus which caused his kidney cancer. *See* Certified Record (C.R.) Item 2, Claim Petition, at 2. Claimant declared that he was totally disabled from July 13 to September 23, 2016, December 6 to December 20, 2017, and January 8 to February 1, 2018.[5] *See id.* at 3. On June 15, 2019, Employer issued a Notice of Compensation Denial, indicating that Claimant did not sustain a work-related injury or disease. On June 26, 2019, Employer denied the allegations in the Claim Petition. The WCJ conducted hearings on July 16, 2019, and February 11 and May 12, 2020.

At the July 16, 2019 hearing, Employer agreed to Claimant's allegations as averred in his Claim Petition, but contested causation. At the WCJ hearings, Claimant offered the testimony of internal and occupational medicine expert Arthur L. Frank, M.D., Ph.D. (Dr. Frank), who reported that firefighters are exposed to arsenic, asbestos, polycyclic aromatic hydrocarbons (PAHs), and trichlorethylene (TCE).[6] *See* WCJ Dec. at 9, Finding of Fact (FOF) 10a. Dr. Frank "opined that Claimant's exposure to arsenic, asbestos, diesel fumes and TCE [was] the major occupational risk factor[] for developing kidney cancer." WCJ Dec. at 11, FOF 10h.

Employer submitted Howard Sandler, M.D.'s (Dr. Sandler) deposition testimony, in which Dr. Sandler declared that Claimant's clear cell renal carcinoma was not caused by occupational exposure as a firefighter, as there is no data which

---

[5] Claimant has returned to work and feels fine, but undergoes check-ups every six months.

[6] TCE is "a halogenated alkene compound formed by the reaction of organic material produced by burning and chlorine from sources such as polyvinyl chloride furnishings and products found in structures." *Bristol Borough v. Workers' Comp. Appeal Bd. (Burnett)*, 206 A.3d 585, 590 (Pa. Cmwlth. 2019).

clearly supports the presence of a causal nexus. Employer also offered, *inter alia*, the IARC's Classification of Carcinogens by Cancer Site, that lists TCE as a Group 1 carcinogen that causes kidney cancer in humans. *See* WCJ Dec. at 12, FOF 12 (Reproduced Record (R.R.) at 185a).[7] In addition, Employer submitted, *inter alia*, IARC's Monograph 106 (TCE), published in 2014, which "identif[ies] TCE as a Group 1 carcinogen for kidney cancer." WCJ Dec. at 15, FOF 17 (R.R. at 234a-516a).

When Act 46 was enacted in 2011, TCE was listed in Group 2a as a substance "probably carcinogenic to humans." *Id*. However, in 2014, based on new data that TCE exposure caused kidney cancer, IARC published Monograph 106 in which it reclassified TCE as a Group 1 carcinogen. Employer argued that the IARC did not designate TCE as a Group 1 carcinogen until *after* Act 46 became law on July 7, 2011, and allowing the IARC to add or subtract from Group 1 is an unconstitutional delegation of the General Assembly's legislative authority. *See* WCJ Dec. at 15, FOF 13n.

On November 5, 2020, the WCJ granted the Claim Petition, declaring that Claimant met his burden of proving that his kidney cancer was a work-related injury. *See* WCJ Dec. at 19. Specifically, the WCJ found credible Claimant's testimony that he was exposed to asbestos, arsenic, diesel fuel, soot, PAHs, and TCE, while employed as a firefighter from 2003 to 2016. *See* WCJ Dec. at 17, FOF 24. The WCJ also found credible Dr. Frank's testimony that Claimant's clear cell renal carcinoma was caused by his cumulative exposures to asbestos, arsenic, TCE, PAHs, diesel fuel emissions, and soot over those 13 years. *See* WCJ Dec. at 17, FOF 25.

---

[7] Employer's Reproduced Record page numbers do not comply with Pennsylvania Rule of Appellate Procedure (Rule) 2173, which requires that "the reproduced record . . . shall be numbered separately in Arabic figures . . . followed . . . by a small a[.]" Pa.R.A.P. 2173. In accordance with Rule 2173, this Court references the Reproduced Record page numbers herein with a corresponding *a*.

Employer appealed to the Board, which affirmed the WCJ's decision. Employer appealed to this Court.[8]

Employer argues that the WCJ erred by relying on Claimant's TCE exposure to grant the Claim Petition under Section 108(r) of the Act. Specifically, Employer contends that interpreting Section 108(r) of the Act to include TCE as a Group 1 carcinogen *after* Act 46 became law on July 7, 2011, makes Section 108(r) of the Act reliant on the IARC's ever-changing Group 1 carcinogen list and, thus, the General Assembly unconstitutionally delegated its lawmaking authority to the IARC.

> An injured employee seeking to obtain [WC] benefits for a work-related injury bears the burden of proving all elements necessary to support an award. Pursuant to Section 301(c)(1) of the Act, 77 P.S. § 411(1), an employee's **injuries** are compensable if they (1) arise in the course of employment and (2) are causally related thereto.

*Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods)*, 37 A.3d 72, 75 n.4 (Pa. Cmwlth. 2012) (emphasis added; citation omitted). Section 301(c)(2) of the Act provides, in relevant part: "The terms '**injury**,' 'personal injury,' and 'injury arising in the course of his employment,' as used **in this [A]ct, shall include** . . . **occupational disease as defined in [S]ection 108 of this [A]ct[.]**" 77 P.S. § 411(2) (emphasis added). On July 7, 2011, Act 46 added Section 108(r) to the Act, which defines the term *occupational disease* to include, *inter alia*, "[**c**]**ancer suffered by a firefighter which is caused by exposure to a known carcinogen [that] is recognized as a Group 1 carcinogen by the [IARC].**" 77 P.S. § 27.1(r) (emphasis added).

---

[8] "[This Court's] review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed[,] or whether constitutional rights were violated." *DiLaqua v. City of Phila. Fire Dep't (Workers' Comp. Appeal Bd.)*, 268 A.3d 1, 4 n.5 (Pa. Cmwlth. 2020) (quoting *Bristol Borough*, 206 A.3d at 595 n.6).

Act 46 also added Section 301(f) to the Act,[9] which provides, in relevant part:

> Compensation pursuant to cancer suffered by a firefighter shall only be to those firefighters who have served four or more years in continuous firefighting duties, **who can establish direct exposure to a carcinogen referred to in [S]ection 108(r) [of the Act]** relating to cancer by a firefighter and have successfully passed a physical examination prior to asserting a claim under this subsection or prior to engaging in firefighting duties and the examination failed to reveal any evidence of the condition of cancer. *The presumption . . .* may be rebutted by substantial competent evidence that shows that the firefighter's cancer was not caused by the occupation of firefighting. Any claim made by a member of a volunteer fire company shall be based on evidence of direct exposure to a carcinogen referred to in [S]ection 108(r) [of the Act] as documented by reports filed pursuant to the Pennsylvania Fire Information Reporting System [(PennFIRS)] and provided that the member's claim is based on direct exposure to a carcinogen referred to in [S]ection 108(r) [of the Act].[10]

77 P.S. § 414 (italic and bold emphasis added).

> Therefore,

> to establish an *evidentiary presumption* of entitlement to compensation in accordance with [S]ection 301(f) [of the Act], the claimant must establish that he or she

>> (1) served four or more years in continuous firefighting duties;

>> (2) had direct exposure to **a Group 1 carcinogen**; and

>> (3) passed a physical examination prior to asserting a claim or prior to engaging in

---

[9] Added by Section 2 of Act 46, 77 P.S. § 414.

[10] The purpose of "the PennFIRS reporting requirement in Section 301(f) [of the Act] is to document a [] firefighter's presence at a type of fire where firefighters are routinely exposed to Group 1 carcinogens known to cause various types of cancers." *Bristol Borough*, 206 A.3d at 602.

> firefighting duties (and the examination failed to reveal any evidence of cancer).
>
> 77 P.S. § 414. . . . [I]f the claimant succeeds in demonstrating an occupational disease and an entitlement *to the evidentiary presumption* of compensability, then the burden of proof shifts to the employer, who must offer "substantial competent evidence that shows that the firefighter's cancer was not caused by the occupation of firefighting." *Id.*

*City of Phila. Fire Dep't v. Workers' Comp. Appeal Bd. (Sladek)*, 195 A.3d 197, 207 (Pa. 2018) (italic and bold emphasis added; footnote omitted). Thus, "Section 301(f) [of the Act], in conjunction with Section 108(r) [of the Act], requires that a firefighter be diagnosed with a type of cancer caused by exposure to a known Group 1 carcinogen." *Caffey v. Workers' Comp. Appeal Bd. (City of Phila.)*, 185 A.3d 437, 439 (Pa. Cmwlth. 2018).

Here, the parties agree that Claimant "served four or more years in continuous firefighting duties[,]" and "successfully passed a physical examination prior to asserting a claim . . . and the examination failed to reveal any evidence of the condition of cancer." 77 P.S. § 414; *see also* Employer Br. at 9. Their disagreement is over whether Claimant established "direct exposure to a Group 1 carcinogen[.]" 77 P.S. § 414.

The *Sladek* Court reflected on the General Assembly's policy behind Section 108(r) of the Act:

> **Section 108(r) [of the Act] embodies a legislative acknowledgement that firefighting is a dangerous occupation that routinely exposes firefighters to Group 1 carcinogens that are known to cause various types of cancers**. The "general causation" requirement under Section 108(r) [of the Act] constitutes a **recognition that different types of cancers have different etiologies and it weeds out claims for compensation for cancers with no known link to Group 1 carcinogens**. . . .

7

In this regard, epidemiological evidence is clearly relevant and useful in demonstrating general causation. Epidemiology deals with, *inter alia*, the identification of potentially causative associations in various populations between possible causative agents and the resulting incidence of particular diseases and seeks to generalize those results. In so doing, epidemiology may provide "useful information as to whether there is a relationship between an agent and a disease and, when properly interpreted, can provide insight into whether the agent can cause the disease." *See, e.g.*, *Blum by Blum v. Merrell Dow Pharm., Inc.*, 705 A.2d 1314, 1323-24 (Pa. Super. 1997), *aff'd sub nom. Blum ex rel. Blum v. Merrell Dow Pharm., Inc.*, . . . 764 A.2d 1 ([Pa.] 2000), *and abrogated on other grounds by Trach v. Fellin*, 817 A.2d 1102 (Pa. Super. 2003). **Given its focus on identifying generalized causal relationships between potential causative agents and the resulting incidence of disease**, epidemiology's **focus on statistical analysis may be uniquely suited to illuminate whether there is a general causal relationship between types of cancer and Group 1 carcinogens**.

*Id*. at 208-09 (italic and bold emphasis added).

The *Sladek* Court further explained:

[**Section 108(r) of the Act**] **only requires the claimant to establish a general causative link** between the claimant's type of cancer and a Group 1 carcinogen. In other words, the **claimant must produce evidence that it is *possible* that the carcinogen in question caused the type of cancer with which the claimant is afflicted**. **It does not require the claimant to prove** that the identified Group 1 carcinogen **actually caused claimant's cancer**. . . . The burden imposed by Section 108(r) [of the Act] is not a heavy burden.

*Sladek*, 195 A.3d at 208 (italic and bold emphasis added). Relying on *Sladek*, this Court has held:

[A] career firefighter may establish direct exposure to a Group 1 carcinogen by evidence of his occupational exposure to fire smoke, soot, diesel exhaust, and other hazardous substances such as asbestos, and expert

8

medical/scientific evidence identifying the Group 1 carcinogens present in those substances. *See, e.g.*, *Caffey* . . . (career firefighter's testimony of occupational exposure to fire smoke, soot and diesel exhaust, combined with expert medical testimony as to causal relationship between [his] cancer and firefighting exposures to these substances, could support an award of medical benefits under Sections 108(r) and 301(f) of the Act).

*Bristol Borough v. Workers' Comp. Appeal Bd. (Burnett)*, 206 A.3d 585, 602 (Pa. Cmwlth. 2019).

Here, Dr. Frank testified, based on his review of Claimant's testimony, medical records, and exposure documentation, and his extensive expertise and review of literature on kidney cancer and chemical substances, including Guidotti, T.L., <u>Evaluating Causality for Occupational Cancers: The Example of Firefighters</u>, Occupational Medicine, 57:466-71 (2007); Mattioli, S., <u>Occupational Risk Factors for Renal Cell Cancer: A Case-Control Study in Northern Italy</u>, Journal of Occupational and Environmental Medicine, 44:128-36 (2002); and Delahunt, B. et al. <u>Occupational Risk Factors for Renal Cell Carcinoma: A Case-Control Study Based on the New Zealand Cancer Registry</u>, British Journal of Urology, 75:578-82 (1995), that, "as a firefighter, [Claimant] had . . . exposure to . . . [TCE,] which [is a] Group 1 carcinogen[] **whenever [it] may have been labeled as such**, that [is] related to the development of kidney cancer." *See* R.R. at 53a-54a (emphasis added); *see also* R.R. at 102a (there is an epidemiologic link between TCE and kidney cancer); C.R. Items 25-28 (studies). Dr. Frank's declaration of a link between TCE and Claimant's cancer is also consistent with the IARC's Classification of Carcinogens by Cancer Site and IARC Monograph 106. *See* R.R. at 185a, 488a.

Ultimately,

a WCJ is required to make credibility and evidentiary determinations, to make findings as to the facts underlying the matter, and to determine whether a claimant has met the burden of proving entitlement to compensation, and

9

with regard to these findings and determinations, "the WCJ is the ultimate finder of fact and the exclusive arbiter of credibility and evidentiary weight." *Thompson v. Workers' Comp. Appeal Bd. (USF&G Co.), . . .* 781 A.2d 1146, 1150 ([Pa.] 2001).

*Dep't of Corr. - SCI Chester v. Faison (Workers' Comp. Appeal Bd.)*, 266 A.3d 714, 730 (Pa. Cmwlth. 2021).

Here, the WCJ concluded that "Claimant [] sustained his burden that he sustained an occupational disease in the nature of [clear cell renal carcinoma,]" WCJ Dec. at 18, Conclusion of Law 2, based on the following findings:

> [10.]i. Upon reviewing Claimant's testimony, Dr. Frank issued a supplemental report which reinforced his findings on causation due to work-related asbestos, arsenic, PAHs and TCE. Dr. Frank opined that Claimant's cumulative exposure to a variety of Group 1 carcinogens that cause kidney cancer caused Claimant's kidney cancer. Claimant was exposed to asbestos when he worked at the ladder company when they would pull down and open up ceilings. Claimant was exposed to [PAHs] with anything that burned carbon, such as wood, rubber tires and gasoline which would include PAHs. Claimant was exposed to arsenic in treated wood. Claimant was exposed to diesel fumes. Claimant was exposed to TCE in burning wood and grass.
>
> [10.]j. Dr. Frank relied on the Guidotti study which was a cohort study of firefighters in Alberta. This 2007 study evaluated the causality in cancers associated with firefighting. The epidemiological literature based cancer risk among firefighters was reviewed. Kidney cancer was one of the cancers given a legislative presumption for compensation for firefighters. Dr. Frank also reviewed studies from Delahunt and Mattioli which were cohort studies. ([*See* Dr. Frank Notes of Testimony, Exs.] C-12 [(C.R. Items 25, 26)], C-13 [(C.R. Item 27),] and C-14 [(C.R. Item 28).])
>
> . . . .
>
> 24. This [WCJ] finds [] Claimant's testimony credible that he was exposed to asbestos, arsenic, diesel fuel[,] [s]oot,

10

PAHs and TCE, while fighting fires for 13 years. Claimant credibly testified regarding some of the fires set forth in the [National Fire Incident Reporting System (]NFIRS[)], a report of firefighting activities from 2008-2018 recorded by [Employer]. Claimant's occupational history was also unrebutted. This [WCJ] further notes that she had the opportunity to personally observe Claimant when []he testified.

25. **This [WCJ] finds the testimony of Dr**. **Frank credible that Claimant's [clear cell renal] carcinoma was caused by his cumulative exposures to asbestos**, **arsenic**, [**TCE**], **PAHs**, **diesel fuel emissions**[,] **and soot while working as a firefighter from 2003-2016**. In so finding, this [WCJ] notes that [Dr. Frank's] opinions are corroborated by Claimant's testimony regarding his job duties and the NFIRS report. This [WCJ] further notes that while TCE is the only carcinogen noted by the IARC to cause kidney cancer, the [Pennsylvania] Supreme Court in *Sladek* found that Claimant need only show that it is possible that the carcinogen in question caused the type of cancer with which the Claimant is afflicted. **In this regard**, **this** [**WCJ**] **finds the testimony of Dr**. **Frank credible that**, **in addition to TCE**, **Claimant's cumulative exposure to asbestos**, **arsenic**, **PAHs**, **diesel fuel emissions**[,] **and soot caused his** [**clear cell renal**] **carcinoma**.

26. This [WCJ] finds that Employer did not rebut the presumption that Claimant's cancer was work-related. In so finding, this [WCJ] rejects the testimony of Dr. Sandler that there was a non-firefighting cause for his cancer. Specifically, Dr. Sandler's opinion that the tumor was present prior to Claimant's employment with Employer is not supported by any of the medical evidence. Rather, Claimant's tumor was noted to be very small and he had a partial nephrectomy. Dr. Sandler's opinion that Claimant's cancer was caused by hypertension is rejected as it was controlled with medication without any issue. Dr. Sandler's opinion that Claimant's cancer was caused by obesity is rejected as Claimant is muscular as he lifts weights. In addition, Dr. Sandler does agree that there is potential exposure to various carcinogens among the many substances created during fires including asbestos, [PAHs], benzene, [and] butadiene, as well as halogenated

> hydrocarbons, e.g., [TCE] and per(tetra) chlor[o]ethylene and diesel exhaust.

WCJ Dec. at 17, FOFs 24-26.

Clearly, based on the evidence the WCJ found credible, TCE was among the dangerous substances to which Claimant was exposed as a firefighter and the cumulative exposure to all of the chemicals over 13 years caused his kidney cancer. In addition, Claimant's evidence established that he was "diagnosed with a type of cancer [(i.e., kidney cancer)] caused by exposure to a known Group 1 carcinogen [(i.e., TCE)]." *Caffey*, 185 A.3d at 439 n.2. Claimant did not have to prove that his TCE exposure actually *caused* his cancer. *See Sladek*. Accordingly, there existed substantial record evidence for the WCJ to award Claimant WC benefits under Section 108(r) of the Act.

Notably, Employer does not challenge the WCJ's findings of fact or whether the findings are supported by substantial evidence, but rather Employer's argument is solely that TCE exposure cannot be a basis on which to award WC benefits to Claimant under Section 108(r) of the Act because it was not listed as a Group 1 carcinogen when Section 108(r) was added to the Act and, thus, violates the non-delegation doctrine under *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827, 841 (Pa. 2017).[11] However, unlike *Protz* and *Pennsylvania Builders Association v. Department of Labor & Industry*, 4 A.3d 215 (Pa. Cmwlth. 2010), wherein the General Assembly expressly authorized third parties to set standards that substantively affected WC recipients and builders

---

[11] This Court acknowledges that "[t]he Pennsylvania Constitution prevents the General Assembly from passing off to another branch or body *de facto* control over matters of policy." *Protz*, 161 A.3d at 841. In addition, well-settled delegation standards and case law specify that the General Assembly has the authority "to delegate to [the IARC], its execution and administrative authority over Pennsylvania's [occupational disease classifications], . . . as long as: (1) basic policy choices are still made by the General Assembly; and (2) the legislation contains adequate standards to guide and restrain the exercise of those functions." *Pa. Builders Ass'n v. Dep't of Lab. & Indus.*, 4 A.3d 215, 224 (Pa. Cmwlth. 2010); *see also Protz*.

without the necessary safeguards in place, in Section 108(r) of the Act, the General Assembly merely established the IARC's Group 1 listings as the evidentiary standard for claimants' statutory presumption that "weeds out" WC claims "for cancer[] with no known link to Group 1 carcinogens." *Sladek*, 195 A.3d at 208. A claimant does not automatically receive WC benefits merely because the IARC listed it as a Group 1 carcinogen. A claimant still has the burden to prove that he was exposed to such a substance and that the substance has been linked to his type of cancer. A WCJ must ultimately determine whether a claimant met his burden based on the evidence presented. Thus, regardless of whether ongoing research may change the IARC's Group 1 list, a claimant's evidentiary threshold remains the same. Accordingly, despite that TCE was not listed as a Group 1 carcinogen when Act 46 was enacted, Claimant's medical expert testified that medical studies and documentation evidenced TCE's known link to kidney cancer. This Court's precedent also supports Claimant's position. *See Bristol Borough* (wherein this Court upheld a WC award under Section 108(r) of the Act based on claimant's credited expert medical opinion that sufficiently established the possibility that *TCE* in fire smoke caused the claimant's diffuse large B-cell/Non-Hodgkin's lymphoma); *see also City of Johnstown v. Workers' Comp. Appeal Bd. (Sevanick)* (Pa. Cmwlth. No. 1156 C.D. 2019, filed May 6, 2020)[12] (wherein this Court upheld a WC benefits award based, in part, on the WCJ's findings that the claimant had direct exposure to IARC Group 1 carcinogens, including TCE, and that such exposure was a substantial contributing factor in the development of his kidney cancer).

---

[12] Unreported decisions of this Court issued after January 15, 2008, may be cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a). The unreported decisions cited herein are cited for their persuasive value.

The Pennsylvania Supreme Court granted an appeal from *Sevanick* on other grounds and affirmed this Court's decision. *See City of Johnstown v. Workers' Comp. Appeal Bd. (Sevanick)*, 255 A.3d 214 (Pa. 2021).

On appeal, neither the Board nor this Court may reweigh the evidence or the WCJ's credibility determinations,[13] *see Sell v. Workers' Comp. Appeal Bd. (LNP Eng'g)*, 771 A.2d 1246 (Pa. 2001), and "[t]he WCJ's findings will not be disturbed if they are supported by substantial, competent evidence." *Rogele, Inc. v. Workers' Comp. Appeal Bd. (Hall)*, 198 A.3d 1195, 1204 (Pa. Cmwlth. 2018) (quoting *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014)). "Substantial evidence . . . [i]s such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Aqua Am., Inc. v. Workers' Comp. Appeal Bd. (Jeffers)*, 199 A.3d 482, 486 (Pa. Cmwlth. 2018) (quoting *Gibson v. Workers' Comp. Appeal Bd. (Armco Stainless & Alloy Prods.)*, 861 A.2d 938, 943 (Pa. 2004)).

> In reviewing the WCJ's credibility and evidentiary determinations, "[i]t is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *Furnari v. Workers' Comp. Appeal Bd. (Temple Inland)*, 90 A.3d 53, 60 (Pa. Cmwlth. 2014) (citation omitted). Thus, this Court's authority in these matters is limited to reviewing the entire record to see if it contains evidence that a reasonable person might find sufficient to support the WCJ's findings. *Id.* If the record contains such evidence, the findings must be upheld, even though the record may contain conflicting evidence. *Id.*

---

[13] Specifically, "Section 422(a) [of the Act, 77 P.S. § 834,] does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations. [Thus, u]nless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal." *Pa. Uninsured Emps. Guar. Fund v. Workers' Comp. Appeal Bd. (Lyle)*, 91 A.3d 297, 303 (Pa. Cmwlth. 2014) (quoting *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006) (citation omitted)); *see also Burnett*, 206 A.3d at 611 (this Court is "bound by the WCJ's credibility determinations"). Capricious disregard "occurs only when the fact-finder deliberately ignores relevant, competent evidence." *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 145 (Pa. Cmwlth. 2004). Capricious disregard, by definition, does not exist where, as here, the WCJ expressly considered and rejected evidence. *See id.*

*Faison*, 266 A.3d at 736.

> Moreover,
>
> [w]hen "performing a substantial evidence analysis, this Court must view the evidence in a light most favorable to the party who prevailed before the fact-finder." *WAWA v. Workers' Comp*[.] *Appeal* [*Bd.*] *(Seltzer)*, 951 A.2d 405, 408 (Pa. Cmwlth. 2008). Further, when determining whether substantial evidence exists to support a finding of fact, this Court must give to the party in whose favor the appealed decision was decided "the benefit of all inferences that can logically and reasonably be drawn from the evidence." *B.J.K. v. Dep*[*'t*] *of Pub*[.] *Welfare*, 773 A.2d 1271, 1276 (Pa. Cmwlth. 2001).

*Obimak Enter. v. Dep't of Health*, 200 A.3d 119, 126 (Pa. Cmwlth. 2018).

Here, viewing the evidence in Claimant's favor, as this Court must, substantial evidence supported the WCJ's conclusion that Claimant proved his entitlement to WC benefits pursuant to *Sladek*. Accordingly, the Board properly affirmed the WCJ's decision.

Based on the foregoing, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia,    :
     Petitioner   :
          :
   v.       :
          :
Joseph Healey (Workers'   :
Compensation Appeal Board), :  No. 1158 C.D. 2021
     Respondent :

# O R D E R

AND NOW, this 21st day of June, 2023, the Workers' Compensation Appeal Board's September 22, 2021 order is affirmed.

_____
ANNE E. COVEY, Judge